**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: CROWN VANTAGE, INC.,
            *Debtor,*

JEFFREY H. BECK,
            *Plaintiff-Appellant,*

v.

FORT JAMES CORPORATION; FORT
JAMES FIBER CO.; FORT JAMES
INTERNATIONAL HOLDINGS LTD.;
McGUIRE WOODS,
            *Defendants-Appellees.*

No. 04-16443

D.C. Nos.
CV-04-01041-MMC
03-4240-AN

JEFFREY H. BECK,
            *Plaintiff-Appellee,*

v.

FORT JAMES CORPORATION; FORT
JAMES FIBER CO.; FORT JAMES
INTERNATIONAL HOLDINGS LTD.;
McGUIRE WOODS,
            *Defendants-Appellants,*

and

CROWN VANTAGE, INC.,
            *Debtor.*

No. 04-16547

D.C. No.
CV-04-01041-MMC
03-4240AN

OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

11751

Argued and Submitted
March 17, 2005—San Francisco, California

Filed August 30, 2005

Before: Sidney R. Thomas and Raymond C. Fisher,
Circuit Judges, and James L. Robart,* District Judge.

Opinion by Judge Thomas

---

*The Honorable James L. Robart, United States District Judge for the
District of Western Washington, sitting by designation.

## COUNSEL

Malcolm Loeb, Leo R. Beus and Richard R. Thomas, Beus Gilbert PLLC, Scottsdale, Arizona; Allen Steyer and Edward Egan Smith, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, San Francisco, California, for the plaintiff-appellant.

Kristin Linsley Myles and Susan Traub Boyd, Munger, Tolles & Olson LLP, San Francisco, California; Joseph F. Coyne, Jr. and Michelle Sherman, Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, California, for appellees and cross-appellants Fort James.

James C. Krieg and Stan G. Roman, Krieg, Keller, Sloan, Reilley & Roman LLP, San Francisco, California, for appellee and cross-appellant McGuire Woods.

## OPINION

THOMAS, Circuit Judge:

The parties in this case appeal and cross-appeal the order of the district court vacating an injunction issued by the bankruptcy court. We affirm in part and reverse in part.

I

The success of an industry often depends on generating demand for its goods, so it is perhaps not surprising that litigation in the paper manufacturing industry would require a prodigious quantity of its product. This appeal concerns a small, but nonetheless important, cogwheel in the legal machinery of the Crown Vantage, Inc. bankruptcy, which itself was a byproduct of various corporate organizational fabrications and deconstructions.

Through a series of mergers and acquisitions, the James River Corporation ("James River"), a publicly-held corporation, ultimately became the successor in interest to such business entities as the Crown-Zellerbach Corporation and the Northern Paper Mills Company. James River, in turn, merged with the Fort Howard Paper Company to form the Fort James Corporation ("Fort James"). Fort James was eventually acquired by the Georgia-Pacific Corporation, but this development would not occur until years after the events that form the basis of our story.

In 1995, James River decided to spin off certain assets related to its communications papers and packaging business ("Crown Assets"). To that end, it formed Crown Vantage, Inc. ("Crown Vantage"), as a wholly-owned subsidiary holding company, and Crown Paper, Inc. ("Crown Paper"), an operating entity wholly owned by Crown Vantage.[1] James River transferred all of the Crown Assets to the Crown Entities, and then spun off all its shares of stock in Crown Vantage as a tax-free dividend to James River shareholders, and Crown Vantage became a publicly-traded, stand-alone corporation. A large portion of this transaction was accomplished through various means, including an agreement ("Contribution Agreement") between James River and the Crown Entities.[2] By late 1997, a number of disputes concerning the Contribution Agreement had arisen between the Crown Entities and James River, which had now through merger become Fort James. In 1998, the Crown Entities and Fort James entered into an agreement to resolve these issues ("Settlement Agreement"). The Settlement Agreement contained extensive mutual releases and provided that the sole forum and venue for any

[1]For convenience of reference, we shall refer to "Crown Vantage" and "Crown Paper" collectively as the "Crown Entities."

[2]Because it is not critical to our discussion, this transaction will be described only in very general terms.

action arising out of the Settlement Agreement would be the federal or state courts of Delaware.[3]

In 2000, the Crown Entities filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. As part of the bankruptcy proceedings, the Unsecured Creditors Committee filed motions seeking authority to investigate the 1995 James River spin-off transaction to determine whether an adversary proceeding should be commenced against Fort James. Approximately a year later, Fort James filed an adversary proceeding seeking a declaration, *inter alia*, that the spin-off transactions did not constitute a fraudulent conveyance and that, in any event, the Settlement Agreement had released Fort James from any liability in connection with the Contribution Agreement and related spin-off transactions.

Subsequently, the Crown Entities, as debtor-in-possession, filed an adversary proceeding against Fort James, alleging the Settlement Agreement release constituted a fraudulent transfer. The Crown Entities also alleged claims for conversion, negligence, breach of fiduciary duty, unjust enrichment, and unlawful distribution. Pursuant to stipulation of the parties, the bankruptcy court consolidated all of the claims between the parties into one action ("the Crown-Fort James Bankruptcy Action").

Eventually, efforts to reorganize the company failed, and the Crown Entities proposed a liquidating plan of reorganization. Under the plan, a liquidating trust ("Crown Liquidating Trust") would be established and a trustee ("Liquidating

[3]The relevant provision in the Settlement Agreement stated: "Each of the parties agrees and submits to the personal jurisdiction of the courts of the State of Delaware, both state and federal, and further agrees that the sole forum and venue for any action or proceeding under, in connection with or relating to this Agreement shall be in the state or federal courts in Delaware."

Trustee") appointed to liquidate the assets of the Crown Entities and distribute the proceeds to creditors in accordance with an agreement ("Liquidating Trust Agreement") that was approved by the bankruptcy court. According to the plan, all assets of the Crown Entities were to be transferred to the Crown Liquidating Trust, and the Liquidating Trustee was substituted as successor to the debtor as to all actions pending or thereafter commenced relating to the bankruptcy estate. The plan named Jeffrey H. Beck as the Liquidating Trustee. The plan acknowledged that the Liquidating Trustee would bring authorized causes of action for fraudulent conveyance, among other claims, against Fort James. The plan also acknowledged that the Trustee would be asserting claims against certain directors and officers of Fort James, Crown Vantage and Crown Paper, underwriters, auditors, and other professionals. The plan expressly noted that potential recoveries from a fraudulent conveyance action against Fort James "could provide a substantial recovery" to creditors of the estate.

After notice and a hearing, on November 22, 2001, the bankruptcy court entered findings of fact and conclusions of law pursuant to 11 U.S.C. § 1129(a) and confirmed the proposed plan. In the confirmation order, the court retained "exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 cases and the Plan to the fullest extent permitted by law, including but not limited to, the matters set forth in Article XII of the Plan." Article XII provided, in relevant part, that:

> [N]otwithstanding the entry of the Confirmation Order or the occurrence of the effective date, the Bankruptcy Court shall retain exclusive jurisdiction, as legally permissible, over all matters arising out of or relating to the Chapter 11 cases, including without limitation, jurisdiction to:

*          *          *

(g)   decide or resolve any dispute or other matter that may arise in connection with or related to the Recovery Proceeds, Available Cash or Distributable Cash, including Distributions thereof

\*          \*          \*

(k)   hear and determine all applications, motions, adversary proceedings, including those in respect of the Avoidance Actions, contested matters, and other liquidated matters that may be pending in the Bankruptcy Court on or initiated after the Confirmation Date, arising out of, under or related to the Chapter 11 cases . . . ;

\*          \*          \*

(x)   [recover] all Assets of the Debtors and property of the Estates, wherever located, including any Causes of Action. . . .

The confirmed plan itself further provided that the "Bankruptcy Court shall retain jurisdiction over this Agreement and the Liquidating Trust established hereby, including without limitation the interpretation and enforcement of its provisions, for the purpose of determining all amendments, applications, claims or disputes with respect to this Agreement and the Liquidating Trust."

A few days prior to the confirmation of the plan, Fort James filed a motion to dismiss the Crown-Fort James Bankruptcy Action. In April, after briefing and oral argument, the bankruptcy court denied Fort James's motion to dismiss. Ultimately, the reference was withdrawn with respect to this action, and it was transferred to the United States District Court in and for the Northern District of California.

In March 2002, the Crown Liquidating Trust filed an action in California state court against McGuire Woods LLP

("McGuire Woods"), the law firm that had represented James River in connection with the corporate spin-off of the Crown Entities and other entities. The defendants removed this action ("the Removed Action") to the United States District Court in and for the Northern District of California. The Crown Liquidating Trust moved to remand the case, but the district court declined to do so because of the "substantial overlap of fact patterns" between the Removed Action and the Crown-Fort James Bankruptcy Action. The court then consolidated the cases (which will now be collectively referenced as the "California Actions").

In October 2002, Fort James and McGuire Woods (the "Fort James Entities") filed a lawsuit ("the Delaware Action") in the Chancery Court of Delaware seeking, *inter alia*, a declaration that the California Actions were barred by the Settlement Agreement. In the Delaware Action, the Fort James Entities contend that the Liquidating Trustee breached the Settlement Agreement in proceeding with the California Actions. The Delaware Action seeks to compel the Liquidating Trustee to dismiss all pending actions against the Fort James Entities. The Delaware Action also seeks damages from the Liquidating Trustee, along with costs and attorneys fees.

The Liquidating Trustee removed the Delaware Action to the United States District Court for the District of Delaware in November 2002. The Liquidating Trustee then filed a motion to dismiss or, in the alternative, to transfer. The Fort James Entities filed a motion to remand. In February 2002, the district court granted the Fort James Entities' motion to remand the Delaware Action to Delaware Chancery Court, and denied the Liquidating Trustee's motion to dismiss or transfer as moot. After remand, the Liquidating Trustee filed a motion to dismiss or, in the alternative, to stay proceedings pending resolution of the California Actions.

The Fort James Entities then filed a motion in the District Court of California seeking an order that the Delaware Action did not violate the automatic stay or the *Barton* doctrine.[4] In August 2003, the District Court held that the Bankruptcy Court should determine those questions in the first instance. Thereafter, the Liquidating Trustee filed an adversary complaint in bankruptcy court and moved for an order enjoining the Fort James Entities from prosecuting the Delaware action. The Fort James Entities argued in response that the *Barton* doctrine was not applicable; that the Delaware Action was against the Liquidating Trustee, not in his personal capacity, but as the legal representative of the Crown Entities; and that there was a presumptively valid forum selection clause in the Settlement Agreement. The Delaware Chancery Court then issued an order staying a ruling on the Liquidating Trustee's motion to dismiss pending resolution of the adversary proceeding.

After notice and a hearing in the adversary proceeding, the bankruptcy court enjoined the Fort James Entities from pursuing the Delaware Action. The bankruptcy court held that the Delaware Action violated *Barton* and that the Settlement Agreement's forum selection clause did not control.

The Fort James Entities appealed the bankruptcy court's grant of a preliminary injunction to the district court. The district court affirmed the bankruptcy court in part and reversed in part. The district court held that the bankruptcy court correctly found that the Liquidating Trustee was likely to prevail on his claim that the Fort James Entities violated the *Barton* doctrine by initiating the Delaware Action without permis-

---

[4]The *Barton* doctrine takes its name from *Barton v. Barbour*, 104 U.S. 126 (1881), in which the Supreme Court ruled that the common law barred suits against receivers in courts other than the court charged with the administration of the estate. *Id.* at 127. The Supreme Court held in *Barton* that, before suit is brought against such a receiver, leave of the court by which the trustee was appointed must be obtained.

sion. However, the district court held that the bankruptcy court erred in granting the preliminary injunction because the Liquidating Trustee had failed to establish irreparable harm. The district court therefore vacated the preliminary injunction issued by the bankruptcy court. This appeal and cross-appeal followed. The Liquidating Trustee appealed the district court's order vacating the injunction; Fort James cross-appealed the district court's conclusions concerning application of the *Barton* doctrine.

## II

**[1]** The first question presented by this case is whether, and to what extent, a bankruptcy court-appointed trustee of a liquidating trust may be sued in a foreign jurisdiction without permission of the court appointing the trustee.

## A

**[2]** We join our sister circuits in holding that a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity. *See Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004); *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000); *In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998); *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). In our circuit, the doctrine was recognized by our Bankruptcy Appellate Panel in *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 883-85 (9th Cir. BAP 1995).

**[3]** This holding is firmly grounded in the *Barton* doctrine, established by the Supreme Court over a century ago, which provides that, before suit can be brought against a court-appointed receiver, "leave of the court by which he was appointed must be obtained." 104 U.S. at 127; *see also Davis*

*v. Gray*, 83 U.S. 203, 218 (1872) (holding that the court appointing a receiver "will not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties, or others, without [the court's] consent"). The Court held that if leave of court were not obtained, then the other forum lacked subject matter jurisdiction over the suit. *Barton*, 104 U.S. at 127. Part of the rationale underlying *Barton* is that the court appointing the receiver has in rem subject matter jurisdiction over the receivership property. *Id.* at 136. As the Supreme Court explained, allowing the unauthorized suit to proceed "would have been a usurpation of the powers and duties which belonged exclusively to another court." *Id.*[5]

**[4]** The *Barton* doctrine applies in bankruptcy, because "[t]he trustee in bankruptcy is a statutory successor to the equity receiver," and "[j]ust like the equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." *Linton*, 136 F.3d at 545.

**[5]** Indeed, the policies underlying the *Barton* doctrine apply with greater force to bankruptcy proceedings than to other proceedings involving receivers. The filing of a bankruptcy petition creates a bankruptcy estate, consisting of all of the debtor's legal or equitable interests in property "wherever located and by whomever held." 11 U.S.C. § 541(a). Thus, "[t]he district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate." *Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998). The court's exercise of in rem bankruptcy jurisdiction "essentially creates a fiction that the property—regardless

---

[5]The Fort James Entities argue that the Liquidating Trustee has waived any *Barton* protection by litigating the Delaware Action for four months before raising a *Barton* defense. However, because *Barton* implicates the subject matter jurisdiction of the court, it may be raised at any time.

of actual location—is *legally* located within the jurisdictional boundaries of the district in which the court sits." *Id.* (citations omitted). Thus, the jurisdiction of the bankruptcy court exceeds that of any other court-appointed receiver. The requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy court.

## B

**[6]** The Fort James Entities argue that the *Barton* doctrine has been superseded by statute. It is true that a limited statutory exception to the *Barton* doctrine is codified at 28 U.S.C. § 959(a). However, that exception is not applicable here. Section 959(a) provides that:

> Trustees, receivers or managers of any property, including debtors-in-possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

**[7]** By its terms, this limited exception applies only if the trustee or other officer is actually operating the business, and only to "acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." *Muratore*, 375 F.3d at 144. "Section 959(a) does not apply to suits against trustees for administering or liquidating the bankruptcy estate." *Carter*, 200 F.3d at 1254. "[A]ctions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate." *Muratore*, 375 F.3d at 144 (citing

*Field v. Kansas City Refining Co.*, 9 F.3d 213, 216 (8th Cir. 1925)). The few examples of suits that have been allowed under § 959(a) include a wrongful death action filed against an operating railroad trustee and suits for wrongful use of another's property. *Id.* (citing *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 138 (1946) and *Valdes v. Feliciano*, 267 F.2d 91, 94-95 (1st Cir. 1959)).

**[8]** Here, the Liquidating Trustee was not operating the business previously conducted by the debtor; he was liquidating the assets of the estate. This is precisely the type of activity that the *Barton* doctrine was designed to protect. Thus, the limited exception to the *Barton* doctrine contained in § 959(a) does not apply.

C

**[9]** The Fort James Entities also contend that the *Barton* doctrine does not apply because the bankruptcy court had confirmed a plan, and therefore the Crown Liquidating Trust was operating separately from the bankruptcy itself. Similar arguments, involving lawsuits operating separately from their related bankruptcy cases, were firmly rejected by the First Circuit in *Muratore,* 375 F.3d at 147 (applying *Barton* to a lawsuit filed after the bankruptcy case was "closed and the estate assets no longer 'in the receiver's hands' "), and by the Seventh Circuit in *Linton*, 136 F.3d at 544-45 (applying *Barton* to a state court lawsuit filed eleven months after the bankruptcy case was closed), and we agree with the analysis of our sister circuits that "the doctrine serves additional purposes even after the bankruptcy case has been closed and the assets are no longer in the trustee's hands." *Muratore*, 375 F.3d at 147 (citing *Barton*, 104 U.S. at 128). Both *Muratore* and *Linton* involved closed estates; here the rationale for continuing jurisdiction and supervision is stronger because the estate is still open, with a liquidating trust operating pursuant to the confirmed plan, and subject to continuing bankruptcy jurisdiction.

In addition, "[a] confirmed reorganization plan operates as a final judgment with res judicata effect." *Unsecured Creditors Comm. v. Southmark (In re Robert L. Helms Construction & Development Co., Inc.)*, 139 F.3d 702, 704 (9th Cir. 1998); *see also Stoll v. Gottlieb*, 305 U.S. 165, 170 (1938) (same). Here, the confirmed plan provided for the continuation of the Crown-Fort James Bankruptcy Action by the Liquidating Trustee. If the Fort James Entities had any objections to this, those objections should have been registered before plan confirmation. "[I]f a creditor fails to timely object to a plan or appeal a confirmation order, 'it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code.' " *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1172 (9th Cir. 2004) (quoting *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir. 1999) (quoting *Andersen v. UNIPACNEBHELP (In re Andersen)*, 179 F.3d 1253, 1258 (10th Cir. 1999))). If a court preserves issues for later adjudication by adversary proceeding, then the merits of those actions are preserved for later adjudication. *Id.* However, the confirmed plan distributed the cause of action to the Liquidating Trust. To raise the identical issues in a different forum in contravention of the liquidating procedure approved in the confirmed plan is an impermissible collateral attack on the confirmed plan. *See Billmeyer v. Del Mar News Agency (In re Universal Display & Sign Co.)*, 541 F.2d 142, 146 (3d Cir. 1976) (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940)).

Further, the fact that the officer involved is not a bankruptcy trustee, but rather a liquidating trustee, is of no moment. As the Sixth Circuit has observed, under the *Barton* doctrine, "court appointed officers who represent the estate are the functional equivalent of a trustee. . . ." *Delorean*, 991 F.2d at 1241. Here, as part of a liquidating Chapter 11 reorganization proceeding, the bankruptcy court chose the mechanism of a liquidating trust to liquidate and distribute the assets of the estate. The bankruptcy court retained jurisdiction over

the case. In this context, the Liquidating Trustee is the "functional equivalent" of the bankruptcy trustee and is entitled to *Barton* protection. *Id.*

[10] Thus, the fact that the bankruptcy assets are now being liquidated through the vehicle of a liquidating trust with an appointed liquidating trustee does not prevent the application of the *Barton* doctrine.

D

[11] The Fort James Entities also argue that *Morris v. Jones*, 329 U.S. 545 (1947), either overruled or substantially limited *Barton*, and permits the Delaware Action to continue. *Morris* was a full faith and credit case concerning a judgment obtained against the debtor; it did not involve the question of whether an entity suing the trustee or receiver required leave of the appointing court before commencing such an action in a foreign jurisdiction. *Id.* at 547. There is no conflict between *Morris* and *Barton*. *See, e.g., SEC v. United Financial Group, Inc.*, 576 F.2d 217, 221 n.9 (9th Cir. 1978) (distinguishing *Barton* from actions involving full faith and credit).[6]

[12] Absent a final judgment, the Full Faith and Credit Clause has no application. *Lynde v. Lynde*, 181 U.S. 183, 187 (1901). The Fort James Entities do not have judgment upon which they seek recognition; they simply wish to race to obtain one. *Barton* precludes them from doing so without leave of court.[7]

---

[6]The Fort James Entities also cite *Morris* for the proposition that the claims at issue in this case do not affect the administration of the estate and that therefore, as a matter of law, consent is not required. However, as we shall discuss in section III, the question of whether a foreign action affects the bankruptcy estate is an issue committed to the discretion of the bankruptcy court, guided by consideration of the factors identified in *Kashani.*

[7]Moreover, *Morris* did not involve a case in which there was a prior pending action. Because all of the matters contained in the Delaware

Nor did *Morris* limit the *Barton* doctrine to suits not involving proofs of claims. Long after *Morris* was decided, we held without limitation that a trustee "is not subject to suit without leave of the appointing court for acts done in his official capacity and within his authority as an officer of the Court." *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967). As we have noted, the BAP declined to draw such a distinction in *Kashani*. More recently, we stated the *Barton* doctrine without any "proof of claim" qualifications, holding that:

> without leave of the bankruptcy court, no suit may be maintained against a trustee for actions taken in the administration of the estate. A court other than the appointing court has no jurisdiction to entertain an action against the trustee for acts within the trustee's authority as an officer of the court without leave of the appointing court.

*Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 945 (9th Cir. 2002).

There are good policy reasons for rejecting the limitation urged by the Fort James Entities. If the *Barton* doctrine is limited, *Barton* will not protect trustees from suit unless the suit has the potential to affect the ratio of distribution. *See, e.g., Muratore v. Darr*, 375 F.3d 140 (1st Cir. 2004) (noting other potential costs in such suits). As Judge Posner noted in *Linton*:

---

Action arose "out of the transaction or occurrence that is the subject matter of the opposing party's claim and do[ ] not require for [their] adjudication the presence of third parties of whom the court cannot acquire jurisdiction," the causes of action were compulsory counterclaims in the California Actions. Fed. R. Civ. P. 13(a). Federal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action. *Cheiker v. Prudential Insurance Co.*, 820 F.2d 334 (9th Cir. 1987); *Springs v. First National Bank*, 835 F.2d 1293 (9th Cir. 1988).

> Just like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded. This concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great . . . .

136 F.3d at 545.

This concern does not dissipate with the conclusion of the bankruptcy, as Judge Posner also underscored:

> Without the [*Barton*] requirement, trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.

*Id.*; *see also Carter,* 220 F.3d at 1252.

**[13]** More importantly in this context, *Morris* and its progeny have no application to bankruptcy proceedings. As the Supreme Court has stated, "[t]he broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the

bankrupt's estate." *United States v. Embassy Restaurant*, 359 U.S. 29, 31 (1959) (quoting *Kothe v. R. C. Taylor Trust*, 280 U.S. 224, 227 (1930)). As Justice Douglas noted, "[t]he power of the bankruptcy court to subordinate claims or adjudicate equities arising out of the relationship between the several creditors is complete." *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941). Under the Bankruptcy Code, a bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, whatever limited application *Morris* may have on *Barton* in a non-bankruptcy context, *Morris* does not affect the jurisdiction and power of the bankruptcy court to adjudicate claims directly or to provide a mechanism for the adjudication of claims through a confirmed Chapter 11 plan of reorganization.[8]

E

**[14]** In sum, the bankruptcy court correctly held that prosecuting the Delaware Action without obtaining leave of the bankruptcy court violated the *Barton* doctrine. Neither 28 U.S.C. § 959(a), nor *Morris*, nor the fact that the bankruptcy court used the vehicle of a liquidating trust provides an exception in this case. Simply put, the Fort James Entities are attempting to circumvent the processes established by the bankruptcy court in the confirmed plan by filing an action in a foreign jurisdiction without seeking leave of court. Thus, this is simply a "run of the mill *Barton* case." *Carter*, 220 F.3d at 1252. Before filing the Delaware Action, the Fort James Entities were required to first obtain consent of the bankruptcy court and absent that leave, the Delaware courts lacked subject matter jurisdiction over the suit. *Id.*

---

[8]In addition, as we have noted, "final judgments in state courts are not necessarily preclusive in United States bankruptcy courts." *Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1079 (9th Cir. 1999) (en banc). Therefore, even if the Fort James Entities had acquired a post-petition judgment in state court, a different analysis under the Full Faith and Credit Clause would apply. *Id.* at 1082 n.6.

### III

**[15]** Although the district court agreed with the bankruptcy court that the Liquidating Trustee was likely to prevail on his claim that the Fort James Entities had violated the *Barton* doctrine, it erroneously vacated the preliminary injunction granted by the bankruptcy court. The district court incorrectly held that the Liquidating Trustee was required to establish irreparable harm as a requirement for obtaining preliminary injunctive relief. In the usual federal civil case, "[t]he standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties." *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). However, our usual preliminary injunction standard does not apply to injunctions issued by the bankruptcy court pursuant to 11 U.S.C. § 105. That section specifically provides:

> *The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.* No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).

**[16]** The only requirement for the issuance of an injunction under §105 is that the remedy conform to the objectives of the Bankruptcy Code. Thus, as the Seventh Circuit has observed:

> a bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to

demonstrate an inadequate remedy at law or irreparable harm.

*In re L & S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir. 1993). As the Sixth Circuit further noted, "Section 105(a) contemplates injunctive relief in precisely those circumstances where the parties are 'pursuing actions in other courts that threaten the integrity of a bankrupt's estate.' " *Delorean*, 991 F.2d at 1242 (quoting *In re Baptist Medical Center,* 80 B. R. 637, 641 (Bankr. E. D. N.Y. 1987) (quoting *Manville Corp. v. Equity Security Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 63 (2d Cir. 1986))).

It would thwart the purpose of the *Barton* doctrine to add an additional requirement that the party show irreparable harm before being able to obtain relief. The essence of the *Barton* doctrine is that parties may not commence or maintain unauthorized litigation. The only appropriate remedy, therefore, is to order cessation of the improper action. There is no requirement in *Barton* or any of its progeny that the aggrieved party bear the additional burden of showing irreparable harm, nor does such a requirement make any sense in the *Barton* context. Indeed, even in the non-bankruptcy context, we have held that courts appointing a receiver are invested with broad power to issue orders barring actions which would interfere with its administration of that estate. *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir. 1970).

The BAP has identified a series of factors for the bankruptcy court to consider in exercising its discretion to decide whether or not to enjoin litigation in another jurisdiction pursuant to the *Barton* doctrine, namely:

> 1. Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate. If the proceeding is under 28 U.S.C. § 959(a), then no court approval is necessary. However, the moving party may request

this initial review by the bankruptcy court in the motion for leave to sue the trustee, or perhaps in the form of a complaint, seeking a declaratory judgment from the bankruptcy court.

2. If approval from the appointing court appears necessary, do the claims pertain to actions of the trustee while administering the estate? By asking this question, the court may determine whether the proceeding is a core proceeding or a proceeding which is related to a case or proceeding under Title 11, United States Code.

3. Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?

4. Are the movants or proposed plaintiffs seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally?

5. Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?

*Kashani*, 190 B.R. at 886-87 (internal citation omitted).

The existence of "one or more of these factors may be a basis for the bankruptcy court to retain jurisdiction over the claims." *Id.* at 887. As the BAP explained, analysis of these factors will "determine whether the issues affect solely the administration of the bankruptcy estate and should be heard by the bankruptcy court," and "which claims should be tried in another forum." *Id.*

[17] The district court erred in imposing an irreparable harm requirement. The appropriate analysis should have been

guided by *Kashani*. In this case, the bankruptcy court carefully applied the *Kashani* factors and concluded that allowing the Delaware Action to proceed would impair its jurisdiction because the Delaware court would be entertaining a suit against an officer of the court by a party that failed to obtain leave to file the action. We find no abuse of discretion in the Bankruptcy Court's *Kashani* analysis. Indeed, the Fort James Entities candidly admit that they seek a race to the courthouse to obtain potentially conflicting judgments. This is exactly that type of multiple litigation and resulting conflict that the bankruptcy process is designed to avoid. The bankruptcy court was entirely justified in issuing a § 105(a) injunction.

## IV

In sum, we conclude that the bankruptcy court and the district court correctly determined that the Fort James Entities had violated the *Barton* doctrine by suing the Liquidating Trustee in a foreign jurisdiction without leave of the bankruptcy court. We further conclude that the district court incorrectly required the Crown Entities to establish irreparable harm in order to obtain a preliminary injunction. Rather, the effect of the *Barton* violation must be assessed under *Barton*, § 105, and *Kashani*. Under these standards, the bankruptcy court's injunction must stand.

**AFFIRMED IN PART; REVERSED IN PART**