**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
MEHRI AKHLAGHPOUR,

          Debtor.

---

GIOVANNI ORANTES; LUIS
SOLORZANO; ORANTES LAW FIRM,

          Appellants,

v.

MEHRI AKHLAGHPOUR,

          Appellee.

BAP No. CC-23-1059-LSG

Bk. No. 1:17-bk-12739-VK

**MEMORANDUM**[*]

Appeal from the United States Bankruptcy Court
for the Central District of California
Victoria S. Kaufman, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and GAN, Bankruptcy Judges.

Memorandum by Judge Lafferty
Dissent by Judge Gan

### INTRODUCTION

After the California Court of Appeal affirmed the dismissal of most

of her malpractice claims against her former bankruptcy counsel for failing

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

to obtain prior approval from the bankruptcy court to bring the claims, debtor Mehri Akhlaghpour reopened her bankruptcy case to seek approval under the *Barton* doctrine to continue the state court litigation. The bankruptcy court granted the motion in part. Akhlaghpour's former counsel, appellants Giovanni Orantes, his law corporation, and his associate attorney Louis Solorzano (jointly "Orantes"), argue on appeal that the bankruptcy court lacked subject matter jurisdiction to hear the Barton motion. Because the very purpose of the Barton doctrine is to ensure that bankruptcy courts consider requests to sue professionals of the bankruptcy estate, it clearly had subject matter jurisdiction. It could not, however, alter the state court judgment dismissing Akhlaghpour's malpractice claims. Akhlaghpour sought to correct her error in not obtaining approval from the bankruptcy court before litigating her claims against her bankruptcy counsel in state court. At her request, the bankruptcy court authorized the continued litigation of claims that had previously been dismissed. Under the *Rooker-Feldman* doctrine, the bankruptcy court could not alter the dismissal of litigated malpractice claims. We, therefore, VACATE and REMAND with instructions to the bankruptcy court to dismiss the Barton motion.

## FACTS[1]

### A.  The chapter 11 case

Akhlaghpour, anticipating entry of a large state court judgment against her, met with Orantes on or about October 4, 2017 to discuss the possibility of filing a bankruptcy petition. According to Akhlaghpour, Orantes recommended filing a chapter 11 case to which she agreed. The petition was filed on October 11, 2017. Orantes was approved as bankruptcy counsel for the estate effective as of the petition date. The bankruptcy court subsequently appointed a chapter 11 trustee who began liquidating Akhlaghpour's properties.

Orantes subsequently filed an application for payment of his fees which attached Akhlaghpour's declaration stating simply that she reviewed the application and had no objections to it. The application was approved by the court in the amount requested of approximately $50,000.

On December 4, 2018, the bankruptcy court dismissed the chapter 11 case pursuant to a joint motion by the trustee and Akhlaghpour based on a global settlement between Akhlaghpour and her creditors.

---

[1] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

**B.    The malpractice action**[2]

Akhlaghpour, without seeking permission of the bankruptcy court first as required by *Barton*, filed a complaint against Orantes in Los Angeles Superior Court on December 27, 2019, Case. No. 19STCV46403. A later pled first amended complaint alleged multiple causes of action, including professional negligence, fraud, and breach of contract (the "Malpractice Action"). In her first amended complaint, Akhlaghpour alleged that she had claims against Orantes because of his ill-considered advice resulting in the precipitous decision to file the bankruptcy case (the "Prepetition Claims"). This advice, among other things, caused her allegedly to make mistakes in her schedules and arguably those failures led directly to the loss of confidence in her candor and ability to manage the estate, which resulted in the appointment of a chapter 11 trustee. In Akhlaghpour's view, the appointment of a trustee led to the indiscriminate liquidation of all, or most, of her properties which she argues was not necessary; had she remained in control, she might have been required to sell only a portion of her assets.

Orantes demurred on the grounds that the *Barton* doctrine, and res judicata based on approval of the fee application, barred Akhlaghpour's claims, and that she lacked standing because, as he argued, claims arising

---

[2] Because they are not critical to our discussion, the malpractice allegations will be described only in general terms.

before and during the bankruptcy case belong to the bankruptcy estate unless scheduled and abandoned by the trustee.

The Superior Court sustained the demurrer without leave to amend on September 17, 2020. Akhlaghpour appealed the dismissal to the California Court of Appeals ("COA") which, in a published opinion, reversed the decision in part and affirmed in part. *Akhlaghpour v. Orantes,* 86 Cal. App. 5th 232 (2022).

The COA ruled first that the *Barton* doctrine did not require Akhlaghpour to obtain leave to file the complaint for "claims arising out of bankruptcy counsel's representation after the bankruptcy court appointed a Chapter 11 trustee and Akhlaghpour was no longer a debtor in possession." *Id.* at 239. It commented that "Orantes enjoys no judicial immunity for malpractice while representing Akhlaghpour as debtor out of possession[.]" *Id.* at 247. Neither party disputes this finding.

Second, the COA observed that case law provides that the *Barton* doctrine applies to the Prepetition Claims, i.e., "Orantes's pre-petition, and pre-approval conduct, if that conduct 'crossed the divide of the Petition Date' as interconnected actions 'taken by [Orantes] in the bankruptcy case and/or in the course of administering the bankruptcy estate.'" *Id.* at 245. (citations omitted). The COA stated that these "alleged acts . . . 'cross the divide' of the petition." *Id.* at 245-46 (citing *Cox v. Mariposa Co.,* Case No. 19-CV-01105-AWI-BAM, 2020 WL 1689706, at *7 (E.D. Cal., Apr. 7, 2020) (wrongdoing "prior to commencement of the Receivership is inextricably

intertwined with wrongdoing that took place after the Receivership took effect[.]")). The COA explained, "[i]t would be impractical, if not impossible, to separate claims directed to the few days of advising about and preparing the petition from claims relating to the petition itself. Akhlaghpour herself makes no such distinction. Thus 'the [Prepetition Claims] fall squarely within the *Barton* Doctrine.'" *Id.* at 246.

As to the effect of the approval of Orantes' fee application, the COA stated "[c]laim preclusion would apply here to any services covered by the bankruptcy court fee order." *Id.* at 251. It observed that "Section 330 of the [Bankruptcy] Code specifically obligated the Bankruptcy Court to inquire into the nature and quality of these services, including whether '[Orantes] . . . demonstrated skill and experience in the bankruptcy field'" *Id.* at 252 (citing *Weinberg v. Kaplan, LLC,* 699 F. App'x. 118, 121 (3d Cir. 2017)); *see also* 11 U.S.C. § 330(a)(3)(E).

The COA concluded by noting that Akhlaghpour "may proceed only with claims arising from conduct after [the trustee was appointed]." *Id.* at 256. The COA ordered the Superior Court to permit Akhlaghpour to amend her complaint "to state any claims based solely on Orantes's conduct during the period she was a debtor out of possession and, if she can, to allege facts sufficient to establish standing for such claims." *Id.*

The COA affirmed the remainder of the Superior Court ruling. Though Akhlaghpour now otherwise argues, the COA did not invite

Akhlaghpour to seek a *Barton* ruling from the bankruptcy court. The COA ruling was not further appealed by either party.

## C.    The *Barton* motion

In response to the COA's decision, Akhlaghpour reopened her long-closed bankruptcy case and filed a motion with the bankruptcy court seeking "a court order under the *Barton* doctrine authorizing her **to continue her prosecution of the [Malpractice Action][.]**" [Emphasis added]. The motion sought permission to proceed in state court as to the Prepetition Claims as well as her claims based on post-filing conduct. In addition, she argued that the Malpractice Action is not property of the estate and is therefore properly adjudicated in the state court. Finally she argued that the Malpractice Action was not barred by res judicata based on the Orantes fee application.

Orantes opposed the motion arguing that 1) relief under the *Barton* doctrine may not be obtained retroactively; 2) Akhlaghpour had not made a prima facie case for malpractice; 3) the Orantes fee application approval precluded the malpractice action; and 4) the malpractice claim was property of the bankruptcy estate. Orantes requested that the bankruptcy court "dismiss the state court action." Akhlaghpour replied generally disputing Orantes' arguments.

Neither party discussed whether (or how) the bankruptcy court could make a ruling, in effect, modifying a final order of a state court.

## D. The bankruptcy court ruling

At the hearing on the *Barton* motion, the bankruptcy court made clear its view that Akhlaghpour had stated a prima facie case for malpractice for the Prepetition Claims. It agreed that the "*Barton* doctrine does not apply and res judicata does not apply" to the period after the trustee took possession of the estate. It disagreed, without providing any reasoning, that it was not permitted to authorize a debtor to proceed in state court in a matter already commenced. Finally, it disagreed that the Superior Court did not have subject matter jurisdiction over the Malpractice Action in the first instance although again with little discussion.[3]

The bankruptcy court took a pragmatic view that it made no sense to refuse to permit Akhlaghpour to proceed in the existing case. It opined that if it gave authority, but only to file a new case, Akhlaghpour would do so and the parties would start over. The court made no comments at the hearing, nor did the parties, about the bankruptcy court's subject matter jurisdiction or whether or not the claims in the Malpractice Action were property of the estate.

The bankruptcy court entered its order ruling that Akhlaghpour "is hereby authorized to continue her prosecution of the pending Los Angeles

---

[3] MR. MARTINEZ: And, you know, it's a practical solution, but is it a legal solution if the state court doesn't have subject matter jurisdiction, never had subject matter jurisdiction and this court cannot --

THE COURT: I don't think they didn't have subject matter jurisdiction. I disagree. They just needed approval of this court first, which they now have or will.

County Superior Court case, *Mehri Akhlaghpour v. Giovanni Orantes, et. al.* (19STCV46403) for the period of October 5, 2017 to October 10, 2017, and for the period following February 6, 2018."

Orantes timely appealed.

## JURISDICTION

The bankruptcy court had no subject matter jurisdiction to consider what amounted to a de facto appeal of a judicial decision of a state court. We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting permission to Akhlaghpour to proceed with the pending malpractice action in the Superior Court for the specified periods?

## STANDARD OF REVIEW

If we identify an issue concerning the court's subject matter jurisdiction, we must raise it sua sponte. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Whether a bankruptcy court has jurisdiction is a question of law reviewed de novo. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 34 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013).

## DISCUSSION

Akhlaghpour's request that the bankruptcy court "authorize" continuance of the state court proceeding that had been terminated in relevant part by the state court amounts to a request that the bankruptcy court reverse, modify, or at least, ignore the COA and Superior Court

9

rulings. Such a disposition would violate *Rooker-Feldman* and the full faith and credit clause of the United States Constitution. 28 U.S.C.A. § 1738.[4]

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005), the Supreme Court explained,

> The *Rooker–Feldman* doctrine, we hold today, is confined to . . . : cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

All four factors exist here. Akhlaghpour is the "state-court loser," seeking modification of the COA ruling based on alleged injuries to her caused by the COA ruling, and requesting the bankruptcy court to review and modify the ruling. While she did not directly assert that the COA ruling was erroneous, she requested that the bankruptcy court authorize her to proceed in a manner specifically excluded by the COA. She requested no redress other than a federal court order which would, in effect, modify the COA ruling: an order directly contradicting the state

---

[4] 28 U.S.C.A. § 1738 states in relevant part:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States . . . by the attestation of the clerk . . .
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

court rulings and apparently ordering the state court to proceed on a course inconsistent with its rulings.[5]

On this record, the bankruptcy court had no subject matter jurisdiction to consider Akhlaghpour's request. *See Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003) ("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court.").[6]

We acknowledge that the bankruptcy court's order could be viewed as a simple *Barton* order authorizing Akhlaghpour to proceed against Orantes in another forum as opposed to the bankruptcy court. We could view the authorization to so proceed, as granted in part because it found Akhlagpour made the required prima facie showing of malpractice, which

---

[5] We note that it could be argued that the COA ruling is not final for *Rooker-Feldman* purposes since the COA reversed and remanded as to a portion of the complaint, i.e., the malpractice claims for the post-trustee period, which are not at issue here. But the COA's decision finally adjudicated the *Barton* question as to the Prepetition Claims. *See* Restatement (Second) of Judgments, § 13, cmt e ("Judgment final as to a part of an action or claim. A judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest."); *see also Mothershed v. Justices of Sup. Ct.,* 410 F.3d 602, 604 n.1 (9th Cir. 2005) (as amended) ("[p]roceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level." (citing *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17, 25 (1st Cir. 2005) ("state proceedings will have 'ended' . . . if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated."))).

[6] In *Noel,* the Ninth Circuit noted that a bankruptcy court may modify a state

was not clear error, and in part because there was no ongoing bankruptcy case, no remaining bankruptcy estate, and no bankruptcy administrator to distribute any potential proceeds to creditors.

But the plain language of the bankruptcy court's order authorized Akhlaghpour to proceed **in the pending state court case** for the Prepetition Claims which the COA had specifically terminated. We view the bankruptcy court's order as a modification of the COA decision which is barred by *Rooker-Feldman*.

We do not fault the bankruptcy court for this confusion as Akhlaghpour framed the question to it as one on which the COA had invited input after the COA's ruling which permitted nothing more than limited amendment of the state court complaint with respect solely to the post-trustee appointment conduct. Akhlaghpour's motion to the bankruptcy court specifically prayed for authorization "to continue her prosecution of the pending" Malpractice Action suggesting that granting the authority would be helpful to the state court. That was misleading to the bankruptcy court.

In putative support of this approach, counsel for Akhlaghpour asserted during oral argument to the Panel that "the court of appeal stated that we could go back to the bankruptcy court and get the approval so we were following the directive of the court of appeal." The COA did state, in its introduction, that "the trial court's dismissal with prejudice would

---

judgment but only as part of a chapter 11 or chapter 13 plan. *Id.* at 1155.

12

preclude [Akhlaghpour] even from later seeking leave from the bankruptcy court to refile[.]" *Akhlaghpour*, 86 Cal. App. 5th at 239. It also noted in passing that the bankruptcy court **could** reopen the bankruptcy case and "[i]ndeed, nothing prevents Akhlaghpour from doing so." *Id.* at 247.

We concede that the language chosen by the COA might have been ambiguous, up to a point. It might have meant, "should Plaintiff decide to dismiss the present matter and start over, she might first bring a motion in the bankruptcy court to address *Barton* issues." It might have meant, "should Plaintiff seek to address other conduct by her former counsel in her amended complaint, she might wish to seek clarification from the bankruptcy court re *Barton* issues." Or it might have meant simply, "we must be careful not to permanently foreclose any remedies she might have other than proceeding in state court for malpractice."

But what the COA could not possibly have meant is "having decided to bring an action against your former counsel in state court, without prior approval or clarification from the bankruptcy court regarding any *Barton* doctrine issues, and having therefore put before the state court the precise question of the scope of the *Barton* doctrine to the claims you asserted, and the California Court of Appeal having considered and having ruled on the question of the applicability of the *Barton* doctrine to pre-petition conduct by your former counsel, in a decision that, if of arguable doctrinal validity, was nonetheless made by a court competent to adjudicate the issue, and is now final at least as to the Prepetition Claims, and you having decided not

to take an appeal therefrom, the mandate is 'Please, Plaintiff and counsel, feel free to raise in the bankruptcy court, the same issue as the one we have decided, and if you like that court's answer better than you liked ours, feel free to go with that!'"

Thus to state the proposition advanced by Akhlaghpour in this case is to demonstrate its absurdity. The COA ruled that the Prepetition Claims had melded with the claims asserted for the postpetition period and affirmed the dismissal without leave to amend those claims. It did not intend, nor do we believe even suggest, that the bankruptcy court was now free to modify the state court ruling notwithstanding *Rooker-Feldman*.

## CONCLUSION

For the reasons set forth above, we VACATE AND REMAND, with instructions for the bankruptcy court to dismiss the *Barton* motion for lack of jurisdiction.

Dissent begins on next page.

GAN, Bankruptcy Judge, dissenting.

The *Barton* doctrine requires claims against certain court-appointed officials to be filed in the court that appointed the official, and it bars any other court from exercising jurisdiction over such claims until the appointing court grants leave. The *Barton* doctrine thus involves a threshold question of jurisdiction; it does not involve the merits of the underlying substantive claims. Because leave under *Barton* does not affect the underlying claims, and only the appointing court can decide whether leave is appropriate, a proper grant of leave under *Barton* can never violate the *Rooker-Feldman* doctrine.

I agree with the majority that the bankruptcy court should not have included language in its order authorizing Akhlaghpour to "continue her prosecution" of the pending case because this language could create confusion for the parties and possibly the state court. Disposition of a *Barton* motion is a gatekeeping function—the bankruptcy court merely grants or denies leave—and if it grants leave, the forum court decides all procedural and substantive issues. The *Barton* doctrine does not give the appointing court authority to weigh in on procedural or substantive issues when granting leave. It merely allows the court to lift the gate and permit the case to proceed in another forum. By authorizing the case to "continue," the bankruptcy court implied that Akhlaghpour's claims might still be valid in the pending action.

1

But I do not agree that the bankruptcy court's error is "in effect" a modification, alteration, or reversal of the COA decision. The order does not allow Akhlaghpour to amend her complaint to assert the prepetition claims; it merely authorizes her to proceed in the case unfettered by the *Barton* doctrine's jurisdictional bar. Akhlaghpour may "continue" with her pending case, but she remains bound by procedural and substantive law of the state court, including the COA's decision denying leave to amend the complaint to allege claims barred by the *Barton* doctrine. Nothing in the bankruptcy court's order purports to change this.

Neither Akhlaghpour's request to "continue" her pending litigation, nor the court's inclusion of such language in its order, deprive the bankruptcy court of jurisdiction under *Rooker-Feldman*. By holding otherwise, the majority erroneously expands the *Rooker-Feldman* doctrine in contravention of the Supreme Court's direction in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), and it needlessly creates uncertainty for bankruptcy courts in deciding whether to grant leave under *Barton*—a decision which should be relatively straightforward. Respectfully, I dissent.

1. **The *Barton* doctrine**

The *Barton* doctrine takes its name from *Barton v. Barbour*, 104 U.S. 126 (1881), in which the Supreme Court held that suits against receivers in courts other than the court charged with administration of the estate were barred by common law. *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*,

2

421 F.3d 963, 969 n.4 (9th Cir. 2005). "As applied in the Ninth Circuit, the *Barton* doctrine requires 'that a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity.'" *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 741 (9th Cir. 2009) (quoting *In re Crown Vantage, Inc.*, 421 F.3d at 970).

Without leave of the appointing court, "the other forum lack[s] subject matter jurisdiction over the suit." *In re Crown Vantage, Inc.*, 421 F.3d at 971 (citing *Barton*, 104 U.S. at 127). "[O]nce leave to sue has been granted, and the lawsuit is properly filed in any other forum, the lawsuit will be governed by the applicable rules of procedure of the forum court." *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 887 (9th Cir. BAP 1995).

## 2.    The *Rooker-Feldman* doctrine

The *Rooker-Feldman* doctrine bars lower federal courts from exercising appellate jurisdiction over state-court judgments. "[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme Court]." *Exxon Mobil Corp.*, 544 U.S. at 283. The *Rooker-Feldman* doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

3

A bankruptcy court is not deprived of jurisdiction under *Rooker-Feldman* "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. If the plaintiff "present[s] some independent claim" in federal court, even one that "denies a legal conclusion that a state court has reached in a case to which he was a party," the federal court has jurisdiction and should look instead to state law preclusion principles. *Id.* (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

3.    **The bankruptcy court had jurisdiction to grant leave**

This is not the "paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding." *Id.* (cleaned up). Akhlaghpour requested leave under *Barton* to proceed with her claims against Orantes in state court. The bankruptcy court unequivocally had jurisdiction to decide whether to grant leave, and had it denied leave, it unequivocally would have had jurisdiction over the substantive claims. *See Blixseth v. Brown (In re Yellowstone Mountain Club, LLC)*, 841 F.3d 1090, 1097 (9th Cir. 2016) (holding that "*Barton* claims could not exist independently of [the] bankruptcy case" and "[a] suit against a bankruptcy court officer for actions undertaken in his official capacity necessarily stems from the bankruptcy itself." (cleaned up)).

Because the bankruptcy court granted leave for prepetition claims, the state court properly may exercise jurisdiction over those claims. The COA expressly held that dismissal of the *Barton* claims should be without

4

prejudice because Akhlaghpour could possibly obtain leave from the bankruptcy court and refile her complaint. But because Akhlaghpour admitted that she failed to obtain leave before filing her complaint, the COA held that she could not amend her complaint to allege the *Barton* claims.

The problem here is the implication that, by authorizing Akhlaghpour to "continue" her litigation, the bankruptcy court was disregarding or ignoring the COA's ruling denying leave to amend. Although I do not believe the bankruptcy court's order necessarily conflicts with the COA decision, I agree it should not include the confusing language authorizing Akhlaghpour to "continue" the pending litigation. If the bankruptcy court grants leave under *Barton*, the decision whether to allow amendment lies with the state court. *In re Kashani*, 190 B.R. at 887 ("This Panel concludes that if the Debtors are granted leave of the bankruptcy court to sue in another court, they should have the opportunity to amend the pleadings, **if the forum court permits such an amendment**." (emphasis added)).

Even if we construe Akhlaghpour's motion as an invitation to reverse the COA's decision to deny leave to amend, her independent claim for leave under *Barton* is sufficient to avoid application of the *Rooker-Feldman* doctrine. This is demonstrated by the counterfactual: had the bankruptcy court denied the motion outright, or had it granted leave without including the language purporting to authorize Akhlaghpour to "continue" her case,

the Panel would not reverse the order for lack of jurisdiction. Akhlaghpour's request for authority to "continue her pending case" was improper, but it did not divest the bankruptcy court of jurisdiction to enter an order consistent with the law.

I would affirm the bankruptcy court's decision to grant *Barton* leave for prepetition claims and modify the order to clarify that nothing in the bankruptcy court's order affects state procedural or substantive law in the case.