In re GTI CAPITAL HOLDINGS, L.L.C., an Arizona limited liability company dba Rockland Materials, Debtor.

Grant H. Goodman and Teri B. Goodman, husband and wife as Guarantors–Sureties for GTI Capital Holdings, LLC, G.H. Goodman Invest. Co., LLC (Arizona limited liability companies) West Highland Water & Power, LLC (a Delaware limited liability company); Plaintiff,

v.

California Portland Cement Company (a California corporation, dba Arizona Portland Cement Company); Bombardier Capital, Inc., Empire Southwest, LLC (a Delaware limited liability company); Comerica Bank (a Texas–Michigan Banking Corp.); David M. Reaves, Esq. (Trustee); Michael W. Carmel, Ltd., (Trustee Special Counsel); John R. Clemency, Esq. (lead counsel-joint defense w/CPCC, BCI, Empire S.W. Comerica Bank, G.E. Capital/CitiCapital Technologies); Lewis & Roca LLP; Greenberg Traurig, LLP.

Bankruptcy No. 2:03–bk–07923–SSC.
Adversary Nos. 08–ap–00464, 08–ap–00471.

United States Bankruptcy Court, D. Arizona.

Nov. 19, 2008.

Michael W. Carmel, Ltd., Phoenix, AZ, for Debtor.

## MEMORANDUM DECISION

SARAH SHARER CURLEY,
Bankruptcy Judge.

### I. INTRODUCTION

This matter comes before the Court on a "Notice of Removal" filed with the Court on July 10, 2008 by David M. Reaves, the Chapter 7 Trustee ("Trustee"). The Notice of Removal sought the removal of two "Independent Action[s] to Vacate State Court Judgments," ("Independent Actions") which were filed in the Maricopa County Superior Court ("State Court").[1] Accordingly, two adversary proceedings were opened on the docket in this Court.[2] The Court set a Scheduling Conference for August 27, 2008.[3]

As will be described more fully hereinafter, a number of dispositive motions were soon filed by the Defendants, which was countered with a Motion to Remand, and other relief, by the Plaintiffs. A discovery dispute soon arose which resulted in the filing of a Motion to Compel by the Plaintiffs. After a hearing on the Motion to Compel, this Court concluded that the Motion must be denied and afforded the Defendants the opportunity to seek attorneys' fees and costs in opposing the Motion to Compel. Because the Plaintiffs subsequently withdrew the Independent Actions, in both the State and Bankruptcy Courts, the Court set a hearing to determine whether it still had the jurisdiction to award the attorneys' fees and costs that the Defendants incurred.

After conducting a hearing on the jurisdictional issue on September 29, 2008, taking into consideration the arguments of each of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. As will be set forth more extensively hereinafter, this Court does have the subject matter jurisdiction to hear the issue of sanctions concerning a discovery dispute, and the discovery dispute is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

### II. FACTUAL BACKGROUND

On May 8, 2003, GTI Capital Holdings, LLC, an Arizona Limited Liability Company dba Rockland Materials, and G.H. Goodman Investment Companies, LLC, an Arizona Limited Liability Company, (the "Debtors") filed their petitions for relief under Chapter 11 of the Bankruptcy Code.

On January 19, 2007, the Debtors, then represented by Mr. Carmel, commenced

---

1. The actions were entitled "Ariz.R.Civ.P. 60 Independent Action to Vacate State Court Judgments; Ariz.R.Civ.P. 65(a)(1)(2)(h)(i)(j); Injunctive Relief" in Case Nos. CV2008–04790 and CV2008–04791.

2. *See* Case Nos. 2:08–ap–00464–SSC and 2:08–ap–00471–SSC.

3. *See* Dkt. No. 8.

an action against Comerica Bank–California ("Comerica"), seeking relief under Section 510 of the Bankruptcy Code. On April 30, 2007, the case was converted to one under Chapter 7, and David M. Reaves ("Trustee") was appointed the Trustee.[4] The Trustee chose to retain Mr. Carmel as his attorney concerning the Section 510 action.[5] On February 20, 2008, the Debtors' estate, now represented by the Trustee, and Comerica participated in Mediation before the Honorable Randolph J. Haines, which resulted in a Settlement Agreement whereby Comerica agreed to pay the estate the sum of $950,000. The Settlement Agreement also contained a general release of all claims which the parties then had, or could have asserted, against each other in the Section 510 adversary proceeding. The Debtors' estate also executed a broad release of liability and stipulated to dismiss any other actions being asserted on behalf of the estate in other proceedings against Comerica. The Court issued an Order approving and incorporating the Settlement Agreement on March 17, 2008.

On or about June 20, 2008, the Plaintiffs simultaneously filed their two identical independent actions ("Independent Actions") with the Maricopa County Superior Court in Phoenix, Arizona. On July 10, 2008, the Trustee and his counsel filed a "Notice of Removal" to this Court.[6] Based on the usual procedures of this Court, the Independent Actions were assigned adversary proceeding numbers by the Court's Clerk's Office.[7] In reviewing the Complaints filed in the Independent Actions, the Court has determined that these Actions related to various other actions or motions filed in the Arizona state courts by Mr. and Ms. Goodman, in their capacity as non-debtor guarantors for various debts incurred by the Debtors.[8] It is unclear why West Highland was joined as a Plaintiff in the Independent Actions.

In the Independent Actions, several dispositive and other motions were filed as described hereinafter.

A. On July 10, 2008, the Trustee filed a Motion to Dismiss the Complaint. A joinder was filed by Michael Carmel, Ltd. on July 14, 2008;

B. On July 17, 2008, Empire Southwest, LLC and Burch & Cracchiolo, PA filed a Motion to Dismiss the Complaint;

C. On July 18, 2008, Lewis & Roca LLP filed a Motion to Dismiss the Complaint;

D. On July 21, 2008, MWMF and CPCM filed a Motion to Dismiss the Complaint;

E. On July 21, 2008, the Plaintiffs filed a Motion to Remand;

F. On July 23, 2008 the Plaintiffs filed a Motion to Convert Status Hearing to Merits Hearing;

---

4. *See* Dkt. Entry Nos. 1457, 1461 in Administrative Case, 2:03–bk–07923–SSC (hereinafter "Administrative Case").

5. *See* Dkt. Entry No. 1388 in Administrative Case.

6. *See* Dkt. Entry No. 1 in both Adversary 08–ap–464 and 08–ap–471.

7. The only noticeable difference between the claims appears to be the case number.

8. The Independent Actions appear to be a combined action in response to Case Nos. CV2004–000669 (*California Portland v. Goodman,* et al.); CV2005–010579 (*Bombardier Capital v. Goodman,* et al.); CV2003–005802; CV2003–006484; CV2003–007563; CV2005–003271 (*Comerica Bank v. Goodman,* et al.); CV2004–092589 (*Empire S.W. v. Goodman,* et al.).

G. On July 25, 2008, a Motion to Dismiss the Complaint was filed by Bombardier Capital, Inc.;

H. On July 25, 2008, a Motion to Consolidate Adversaries No. 08–ap–464 and 08–ap–471 was filed by Bombardier Capital, Inc. in Adversary No. 08–ap–464 only. A joinder was filed by MWMF and CPCM on July 29, 2008, and by Empire Southwest and the Trustee on July 31, 2008;

I. On July 31, 2008, the Plaintiffs filed an Omnibus Response to the Motion(s) to Dismiss/Joinders; Motion to Consolidate; Removal and a Cross–Motion for Judgment as a matter of Law; Summary Judgment; Improvident/Defective Removal.

The Court entered an Order on August 4, 2008 setting oral argument on the Motion to Consolidate the Adversary Proceedings for August 27, 2008. This Order also denied the request of the Plaintiffs that the Bankruptcy Rule 7016 Conference be converted into a hearing on the merits.[9] The August 4 Order allowed for discovery consistent with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure. A separate hearing on the Trustee and Trustee's Counsel's Motions to Dismiss was set for September 11, 2008. The remaining Motions were set for hearing on September 17, 2008.

According to Mr. Goodman, the Plaintiffs attempted to schedule consensual depositions on "numerous occasions" both prior, and subsequent, to the issuance of the August 4 Scheduling Order.[10] There were no responses, other than by Brent Gardner through his counsel, Mr. Hallo-

ran. Accordingly, the Plaintiffs "issued, signed, served, and filed" subpoenas, by electronic means, on the night of August 10, 2008 in both Independent Actions.[11] The Plaintiffs filed a "Motion to Compel Subpoenaed Depositions and Documents" ("Motion to Compel") on August 11, 2008, followed by a "Motion for Accelerated Hearing" on the Motion to Compel on August 12, 2008. The Court scheduled a hearing for August 27, 2008 concerning the Motion to Compel. Several Defendants filed responses to the Motion to Compel, requesting the Court deny the Motion, issue a protective order prohibiting further discovery by the Plaintiffs, and award attorneys' fees pursuant to Fed.R.Civ.P. 37, which is incorporated into the Bankruptcy Rules as Rule 7037.

The Court held the Scheduling Conference, along with the hearings regarding the Motion to Consolidate and Motion to Compel on August 27, 2008. The Court entered its decision on the record, granting the Motion to Consolidate, but denying the Motion to Compel. Furthermore, the Court granted the Defendants' request for a protective order as to discovery prior to the hearings on the dispositive motions. The Court, however, withheld its decision regarding the appropriateness of attorneys' fees for the Defendants who opposed the Motion to Compel, and instead ordered the parties to submit affidavits regarding the fees and costs within one week. Additionally, the Court set a hearing regarding the Defendants' request for attorneys' fees for September 29, 2008.

---

9. The Court had entered an order scheduling a Bankruptcy Rule 7016 Conference on August 4, 2008. *See* Dkt. Entry No. 46 in Adv. No. 08–ap–464 and Dkt. Entry No. 36 in Adv. No. 08–ap–471. The August 4 Order denied the Plaintiffs' request to convert the scheduling conference to a hearing on the merits. Hence, the Motion described in Paragraph F above was denied.

10. Mr. Goodman submitted a few emails around the August 4, 2008 date in support of this allegation.

11. *See* Dkt. Entry Nos. 48 in Adversary Case 08–ap–00464–SSC and 38 in Adversary Case 08–ap–00471–SSC.

252

Subsequent to the August 27, 2008 hearings, but prior to the September 29, 2008 hearing, the Plaintiffs withdrew their complaints that had been filed with the Arizona state court, and filed a "Notice of Complaint Withdrawal" with this Court. In an order dated September 16, 2008, this Court dismissed the Independent Actions without prejudice, and set a hearing for September 29, 2008 to determine whether as a result of the dismissal of the Independent Actions, the Court still had subject matter jurisdiction to entertain the Defendants' request for attorneys' fees and costs.[12] The parties presented their arguments, at the time of the September 29 hearing, and the issue was deemed under advisement thereafter.

## III. DISCUSSION

The Plaintiffs argue that the Court never had the subject matter jurisdiction to hear the discovery dispute, or, in the alternative, even if the Court had the requisite jurisdiction, the Court lost said jurisdiction upon dismissal of the case. Accordingly, the Plaintiffs contend that the Court may not entertain a request for attorneys' fees by the Defendants.

Those Defendants seeking attorneys' fees contend that the Court had the subject matter jurisdiction to hear the discovery dispute upon the removal of the Independent Actions to this Court and that even though the Actions were dismissed, the Court retains the necessary jurisdiction to make a determination as to their request for attorneys' fees.

For the reasons set forth hereinafter, the Court concludes that it had jurisdiction over the discovery dispute upon removal of the Independent Actions to this Court, and that despite the dismissal of the Actions,

the Court may still entertain the Defendants' request for attorneys' fees.

### A. THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THE TRUSTEE IS A NAMED DEFENDANT.

A trustee acting in his or her official capacity may not be sued in a court without leave of the court that approves the appointment of the trustee. See Barton v. Barbour, 104 U.S. 126, 136–37, 26 L.Ed. 672 (1881); Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir.1967). cert. denied, 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968); Kashani v. Fulton (In re Kashani ), 190 B.R. 875 (9th Cir. BAP 1995). This rule is subject to a limited exception that provides:

> Trustees, receivers or managers of any property, including debtors-in-possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a). This limited exception applies to a trustee's "acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." Muratore v. Darr, 375 F.3d 140, 144 (1st Cir.2004), quoted in In re Crown Vantage, Inc., 421 F.3d 963 (9th Cir.2005). Additionally, it has long been accepted that the trustee is an officer of the court that approved the appointment of the trustee. In re Kashani, 190 B.R. 875, 884 (9th Cir. BAP 1995). Therefore, as an officer, unless the trustee is being sued for actions

12. See Dkt. Entry No. 103.

taken while conducting the debtor's business, the trustee may remove any state action against him or her to "the district court of the United States for the district and division embracing the place wherein it is pending...." 28 U.S.C. § 1442(a)(3).[13]

█ In filing their lawsuit in the Arizona state court, the Plaintiffs named the Trustee as a Defendant. While it is not entirely clear why it was necessary to name the Trustee as a Defendant, the Plaintiffs argued that the Trustee and Comerica had entered into the Settlement Agreement which somehow relieved the Plaintiffs of any liability that they were subject to as a result of being guarantors on the Debtors' loans. Apparently the Plaintiffs felt that the Trustee's involvement in reaching the Settlement Agreement with Comerica required naming him as a necessary party to the Independent Actions. For purposes of this Decision, what is critical is that the Trustee was named as a Defendant in the Independent Actions without the approval or consent of this Court. It is also clear that since the Debtors ceased their business operations years ago, the Debtors had no operating business which would have allowed the Plaintiffs to sue the Trustee under the limited exception as outlined under 28 U.S.C. § 959(a).[14] The Settlement Agreement to which the Plaintiffs refer in their Independent Actions resolved a number of disputes or claims that the bankruptcy estates had as to one of their creditors, Comerica. Consequently, Section 959(a) does not apply. The Plaintiffs, to have brought the Independent Actions, were re-quired to first seek leave of this Court, which they did not do. Since the Plaintiffs failed to seek such leave, the Trustee properly removed the Independent Actions to this Court pursuant to Section 1442(a)(3). Accordingly, this Court did have subject matter jurisdiction over these Independent Actions.

### B. THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THE CASE INVOLVES A SETTLEMENT AGREEMENT THAT WAS ENTERED INTO AND APPROVED BY ORDER OF THIS COURT.

█ The Courts must ensure that their orders are interpreted and executed in the manner intended. Accordingly, bankruptcy courts have the authority to assert ancillary jurisdiction when another court is interpreting a bankruptcy court's order. *See In re Fibermark, Inc.*, 369 B.R. 761 (Bankr.D.Vt.2007). Ancillary jurisdiction may be asserted for two purposes:

(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]

*Kokkonen v. Guardian Life Ins. Co. Of America*, 511 U.S. 375, 380–81, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Moreover, "bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce

---

**13.** 28 U.S.C. § 1442(a)(3) (West 2008) provides as follows:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

. . .

(3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties;

**14.** The dockets in the Debtors' case reflect the sale of the Debtors' business early in 2004.

their own orders wholly independent of the statutory grant in 28 U.S.C. § 1334." *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr.S.D.N.Y.1996), *aff'd* 213 B.R. 633 (S.D.N.Y.1997). Relevant to this Court's analysis of its subject matter jurisdiction, as it relates to the Settlement Agreement, is the portion of the *Kokkonen* decision which states that although the particular district court did not have ancillary jurisdiction to enforce a settlement agreement:

> [t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision ... or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would exist.... The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

at 381, 114 S.Ct. 1673.

■ As part of their Independent Actions, the Plaintiffs sought enforcement, by another court, of this Court's Order incorporating the Settlement Agreement between the bankruptcy estate and Comerica. The Plaintiffs argued that the broad release language contained in the Settlement Agreement applied to them as guarantors, thereby releasing the Plaintiffs from any liability guaranteed by them as to the unpaid debts of the Debtors. Moreover, the Plaintiffs argued that the Settlement Agreement not only released them from their guaranty obligations to Comerica, but also released them from their guaranty obligations to all creditors, arguing that since the creditors had previously acted in a "joint defense" against the Debtors, the creditors, as a group, were bound by

the actions of their individual members. Consequently, the Plaintiffs theorize that the Settlement Agreement between the Trustee and Comerica acted as a release from their guaranty liability of the Plaintiffs on all of their debts. The Court need not, once again, analyze and offer an opinion as to the merits of the Settlement Agreement or the Plaintiff's current arguments as to how that Agreement somehow relieved them of all liability on their guaranties. It is enough that the Plaintiffs delved into the issue of the interpretation of the Settlement Agreement in their Independent Actions. By so acting, the Plaintiffs requested another court to interpret what this Court had done and what it had set forth in one of its orders. As a result, this Court had the ability to entertain subject matter jurisdiction over the Independent Actions by asserting its ancillary jurisdiction to interpret its own order. The fact that the Plaintiffs ultimately decided to withdraw their Independent Actions does not vitiate this Court's initial subject matter jurisdiction.

C. *ALTHOUGH THE PLAINTIFFS WITHDREW THEIR COMPLAINTS PRIOR TO THE HEARING TO DETERMINE ATTORNEYS' FEES PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 37(a)(5)(B), THE COURT NONETHELESS HAS JURISDICTION TO HEAR THE MATTER.*

■ The Plaintiffs commenced the Independent Actions in the Arizona state court on June 20, 2008. Summonses were timely issued and sent to the named Defendants. The Trustee, as a named Defendant, received a summons from the State Court and promptly filed a Notice of Removal with this Court along with "copies of all process, pleadings ... and minute entries and orders filed in the [state] litiga-

tion prior to removal, plus … a copy of the docket for the removed litigation from the court where the removed litigation is pending." Local Rules of Bankruptcy § 9027–1(c).

Upon receiving the Notice of Removal, this Court promptly set a Bankruptcy Rule 7016 scheduling conference. However, prior to the Scheduling Conference, several pleadings were filed including: (i) several Motions to Dismiss; (ii) a Motion to Remand; and (iii) a Motion to Consolidate the Adversary Proceedings. The Court entered an Order setting these matters for hearing and provided for that discovery which could be conducted by the parties that was consistent with the Federal Rules of Civil Procedure and the Bankruptcy Rules.

The Plaintiffs misinterpreted the Court's Order as a grant of broad authority to perform whatever discovery they felt was necessary at the time. Accordingly, the Plaintiffs served subpoenas on the Defendants, via electronic means, on the night of August 10, 2008. The subpoenas requested the presence of the Defendants in order for the Plaintiffs to perform depositions, and further required the Defendants to bring various documents for the Plaintiffs to review. Critically, before giving the Defendants an opportunity to respond, the Plaintiffs filed a Motion to Compel pursuant to Bankruptcy Rule 7037, which incorporates Fed.R.Civ.P. 37.

A hearing took place on the Plaintiffs' Motion to Compel. The Court, in its oral decision denying the Motion to Compel, made it clear that it had several concerns with the actions the Plaintiffs took in completing "jurisdictional discovery." The Court stated that it did not understand why, given the pending dispositive motions, any discovery was necessary until those motions had been heard by the Court. To the extent that any discovery

was necessary, the Order limited same to "whatever discovery [was] appropriate and consistent with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure." Because the Court is not always aware when the parties to an adversary proceeding have their initial "meet and confer conference," as required by Fed.R.Civ.P. 26(f), it assumes that the parties will have that initial conference, discuss discovery issues, if necessary, and set up a procedure to ensure that any discovery that may be necessary is handled in an expedited and appropriate manner. What is different in this matter is that the Plaintiffs "papered" the Defendants with their discovery requests, demanded that the Defendants contact them to arrange numerous depositions and the turnover of documents, and then moved to an accelerated request to compel the discovery without even bothering to set up the initial Fed.R.Civ.P. 26(f) meet and confer. Thus, the Plaintiffs failed to comply with the very Federal Rule that would have allowed any limited discovery on the subject matter jurisdictional issue. Since no meeting took place with the Defendants, the Plaintiffs were premature in their discovery attempts.

■■■ At the hearing on the Motion to Compel, the Court was also concerned with the fact that the Plaintiffs felt it was necessary to depose Defendants' counsel. The Court is at a loss to determine how counsel would have any relevant information on a subject matter jurisdictional issue even if the appropriate meet and confer under Fed.R.Civ.P. 26(f) had occurred. Also of concern to the Court at the hearing was the fact that none of the Defendants was afforded any opportunity to even advise the Plaintiffs of any discovery issues. Indeed the Plaintiffs filed the Motion to Compel roughly one day after they served the Defendants with the discovery re-

quests. Under the Local Rules of this Court, no motion to compel, or similar type of motion dealing with a discovery dispute, is to be filed unless there is a sincere effort by the party filing the motion to resolve the dispute, and the attorney certifies what those sincere efforts were. *See* Local Rule 9013–1(e). In reviewing the Motion to Compel filed by the Plaintiffs, this Court concludes that there were minimal, and certainly not sincere, efforts by the Plaintiffs to resolve the issues presented. Given the time frame between the electronic discovery requests and the Plaintiffs' filing of the Motion to Compel, the Defendants were not even afforded an appropriate opportunity to respond to the subpoenas.

Given this background, does the withdrawal of the Independent Actions by the Plaintiffs somehow absolve them of any responsibility or liability for their potential discovery abuses? Upon denial of a motion to compel, the Court:

> must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(B); Bankruptcy Rule 7037. At the conclusion of the hearing on the Motion to Compel, the Court denied the Motion, granted the Defendants' request for a protective order, and permitted the Defendants to submit a request for attorneys' fees and costs in opposing the Plaintiffs' Motion. This allowed the Defendants the opportunity or prepare their affidavits on the attorneys' fees and costs incurred and afforded the Plaintiffs the opportunity to challenge the reasonableness of the fees and costs requested and to present their argument as to whether the Motion to Compel was "substantially justified" or there were other "circumstances" which would make such "an award of expenses unjust." The Court set a hearing for September 29, 2008.

Prior to the hearing date, the Plaintiffs withdrew their Independent Actions in the State Court, and filed a Notice of Complaint Withdrawal with this Court. The Court entered an Order dismissing the case without prejudice on September 16, 2008 and set a hearing for September 29, 2008 to determine whether the Court could still award the attorneys' fees of the Defendants even though the Independent Actions had been dismissed.

While the Court has been unable to find any direct authority on this matter, the issues involved in this analysis are similar to those issues involved in an analysis of Fed.R.Civ.P. 11. Rule 11 was amended in 1993. Prior to the amendments, Rule 11 contained mandatory language requiring courts to assess sanctions against an attorney, law firm, or party that filed certain documents with the court for any improper reason. Under the prior version of the Rule, the Supreme Court held:

> [i]n order to comply with Rule 11's requirement that a court 'shall' impose sanctions 'if a pleading, motion, or other paper is signed in violation of the rule,' a court must have the authority to consider whether there has been a violation of the signing requirement regardless of the dismissal of the underlying action.

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

In 1993, Rule 11 was amended in two respects. First, the language of Rule 11 is now discretionary, which allows, but does not require, the courts to assess sanctions

against those parties that file papers with the court for an improper reason. Additionally, the Rule now provides a safe harbor provision requiring the parties seeking sanctions to provide the non-moving party with a copy of the proposed Rule 11 motion 21 days before filing the motion with the court. The non-moving party then has 21 days in which to withdraw its pleading or paper. Fed. Rul. Civ. P. 11(c)(2). If, for instance, the non-moving party withdraws its complaint within the time allotted, the other party may not file a motion for sanctions with the court.[15]

■■■ However, in comparing the current language of Rule 11 with that of Fed.R.Civ.P. 37, Bankruptcy Rule 7037, this Court concludes that Fed.R.Civ.P. 37 is more similar, in its language and effect, to the language in Rule 11 prior to its amendment. Under Fed.R.Civ.P. 37(a)(5), when a party files a motion to compel, the court must award sanctions to either the party opposing the discovery, or the party seeking discovery, unless either party may show special circumstances that make such an award unwarranted. Fed.R.Civ.P. 37(a)(5)(A), (B). Just as with the prior version of Rule 11, Rule 37 contains mandatory language and no safe harbor provision other than the special circumstances as described in the Rule. Given the changes to Rule 11, Congress could have acted to amend any other Federal Rules which had similar mandatory language. That has not happened. Accordingly, the Court finds the reasoning in the *Cooter & Gell* decision to be instructive. Under the *Cooter & Gell* analysis, this Court has not

only the ability, but also the obligation, to hear the Defendants' Motion for Sanctions or request for attorneys' fees and costs although the Independent Actions have been dismissed.

Moreover, allowing a party to avoid sanctions before the Court has had an opportunity to determine whether a discovery abuse has occurred, by the voluntary withdrawal of an adversary proceeding, would certainly invalidate the purpose of Fed.R.Civ.P. 37(a)(5)(B) and be against public policy. If this Court does not have the subject matter jurisdiction to determine whether attorneys' fees and costs are warranted for a discovery abuse in the Independent Actions, no court will have jurisdiction to hear the matter. Such a result is unacceptable. It would allow a wrongdoer to never be held accountable.

To the extent that there still remains any ambiguity for this Court to hear the issue as to the award of the Defendants' attorneys' fees and costs, this Court will amend its order which dismissed the Independent Actions without prejudice for the limited purpose of hearing and resolving the issue of whether the Defendants are entitled to attorneys' fees and costs. The Court may, *sua sponte*, always review and amend its orders so long as no intervening rights have vested. In this case, the Court knows of no change in the rights or positions of the parties that would be affected by this limited amendment to the Dismissal Order. *In re Lenox*, 902 F.2d 737 (9th Cir.1990).

---

15. In response to these amendments to Rule 11, the courts now allow a motion for sanctions to "be filed with the court after judgment [only if] the moving party ... first [serves] the motion for sanctions on the offending party twenty-one (21) or more days prior to [the] final judgment." *Hamil v. Mobex Managed Servs. Co.*, 208 F.R.D. 247, 250

(N.D.Ind.2002). Accordingly, under Rule 11, as amended, the courts have denied a party the right to file a motion for sanctions if it was not presented to the non-moving party more than 21 days prior to the case being dismissed. *See Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir.1997).

258

## IV. CONCLUSION

Based upon the foregoing, this Court concludes that it has subject matter jurisdiction to hear the Independent Actions and that as a part of its ancillary jurisdiction, this Court had the ability to hear the Motion to Compel filed by the Plaintiffs. As a result of the denial of the Motion to Compel, the Court has the subject matter jurisdiction to hear the Defendants' request for attorneys' fees and costs under Fed.R.Civ.P. 37(a)(5)(B). The Court's ability to hear the Defendants' request under Fed.R.Civ.P. 37(a)(5)(B) continues even though the Plaintiffs withdrew the Independent Actions after this Court's decision denying the Plaintiffs' Motion to Compel. The Court will set a further hearing on the Defendants' request for attorneys' fees and costs by separate order of this Court.