# United States Court of Appeals
## For the First Circuit

No. 03-2179

JOSEPH R. MURATORE, SR.,

Plaintiff, Appellant,

v.

STEPHEN DARR, IN HIS CAPACITY AS TRUSTEE
IN BANKRUPTCY ACTION 91-10365,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Howard, Circuit Judge,

Coffin and Campbell, Senior Circuit Judges.

Robert A. Scott with whom Scott & Scott, P.C. was on brief for
appellant.
William J. Hanlon with whom Seyfarth Shaw LLP, Thomas S.
Hemmendinger, Brennan, Recupero, Cascinone, Scungio & McAllister,
LLP were on brief for appellee.

July 19, 2004

CAMPBELL, **Senior Circuit Judge**. The question on appeal is whether the Barton doctrine bars the bringing of this action in the federal district court against a bankruptcy trustee without the prior permission of the bankruptcy court. The district court dismissed the complaint for lack of subject-matter jurisdiction, and we affirm.

**FACTS**

The following facts, except a few that are undisputed, are all alleged in Muratore's amended complaint. Plaintiff-appellant, Joseph R. Muratore, Sr. owned and controlled Columbus Mortgage Company, Inc. (Referred to herein as the "debtor"). On February 15, 1991, the debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On December 23, 1991, the bankruptcy court granted the U.S. Trustee's application to employ defendant-appellee, Stephen Darr, as trustee. On July 18, 1996, the bankruptcy court entered an order confirming the Plan of Reorganization. Approximately four years later, the bankruptcy court entered orders granting Darr's application for final decree and approving his application for final compensation. Muratore filed objections to these applications, which the bankruptcy court considered and denied. Muratore did not appeal. The bankruptcy court closed the case on November 9, 2000.

In September of 2002, Muratore brought the instant lawsuit against Darr, in Darr's capacity as trustee, in the United States District Court for the District of Rhode Island.

On September 30, 2002, apparently without relation to Muratore's present action, the bankruptcy court reopened the bankruptcy proceedings, and they were still open on October 18, 2002 when Muratore amended his complaint herein.[1]

In Count I of his amended complaint, Muratore alleged that Darr "did not faithfully perform the duties of his office and committed acts of misfeasance [and/or] malfeasance in the performance of his duties in that . . . ":

1. he did not pay taxes and, as a result, lost six properties at tax sale;

2. he defectively sold at a foreclosure rental properties, generating three additional law suits;

3. he defectively sold at a foreclosure income properties, generating three additional law suits;

4. he failed to file corporate returns, resulting in forfeiture of charter and causing real estate to revert to stockholders;

---

[1]The reopening of the bankruptcy case was to allow Darr to execute a release of mortgage after the underlying debt was paid. The bankruptcy case was closed again on November 25, 2002.

5. he failed to file tax returns to the Rhode Island Tax Administrator, resulting in the denial of issuance of letters of good standing, causing defective titles and defeating transfer of titles; and

6. purchases of some properties were procured with funds from the Gambino family in violation of 18 U.S.C. § 1956.

In Count II, Muratore alleged that Darr committed abuse of process by committing waste so egregious that his advisors and/or employees used Chapter 11 protection procedures to put Muratore out of business rather than to assist in reorganizing Muratore's business. He further alleged that "such use of his [Darr's] powers constitutes use of judicial appointment and proceedings in bankruptcy for an ulterior purpose, to wit, to make it impossible for Muratore to conduct business and to earn a living from his business." In Count III, Muratore alleged that Darr was negligent because he breached his duty to protect the assets of the trust and to serve the trust with diligence. In Count IV, Muratore alleged that the purchase of certain trust property was financed either directly or indirectly by funds obtained from the illegal interests and enterprises of a notorious crime family in violation of 18 U.S.C. § 1956.

-4-

Muratore neither obtained leave of the bankruptcy court nor sought bankruptcy court authority before commencing this lawsuit in the district court. Citing Muratore's failure to obtain such authority, Darr moved to dismiss the complaint for lack of subject-matter jurisdiction. The district court allowed the motion. Muratore appeals from the dismissal.

## Discussion

"We review 'the grant of a motion to dismiss de novo, taking the allegations in the complaint as true and making all reasonable inferences in favor of plaintiff.'" Doran v. Mass. Tpk. Auth., 348 F.3d 315, 318 (1st Cir. 2003) (quoting Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994)). The central issue here is whether the district court lacked subject-matter jurisdiction because of Muratore's failure to have obtained leave from the bankruptcy court to bring this action in the former court. In determining whether a complaint alleges sufficient facts to establish jurisdiction, we read the complaint holistically. Leblanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 5 (1st Cir. 1999).

In Barton v. Barbour, the Supreme Court ruled that the common law barred suits against receivers in courts other than the court charged with the administration of the estate. 104 U.S. 126, 127 (1881). The Supreme Court ruled that before suit is brought

-5-

against a receiver, leave of the court by which the trustee was appointed must be obtained.  The Court stated:

> So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control.

Id. at 134; see also Katchen v. Landy, 382 U.S. 323, 337 (1966). "Barton involved a receiver in state court, but the circuit courts have extended the Barton doctrine to lawsuits against a bankruptcy trustee."  Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 2000).

A limited exception to the rule announced in Barton was codified in 28 U.S.C. § 959(a).  See, e.g., Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240-41 (6th Cir. 1993) (describing 959(a) exception as "limited").  Section 959(a) states:

> [t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.  Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

Muratore argues that section 959(a) applies here.  In considering this argument, we must ascertain whether Muratore's claims apply to

the trustee's "acts or transactions in carrying on business connected with" the bankruptcy estate.

There is little First Circuit case law on this issue, but courts elsewhere have interpreted "acts or transactions in carrying on business connected with" the bankruptcy estate to mean acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise. See, e.g., Melvin v. Klein, 266 N.Y.S. 2d 533, 536-37 (N.Y. Spec. Term 1965). In interpreting section 959(a)'s predecessor, 28 U.S.C. § 125,[2] Learned Hand, writing for the Second Circuit, concluded that "[m]erely to hold matters in statu quo; to mark time, as it were; to do only what is necessary to hold the assets intact; such activities" did not constitute carrying on business. Vass v. Conron Bros. Co., 59 F.2d 969, 971 (2d Cir. 1932). Rather, section 959(a) "is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a

---

[2]The predecessor to the section 959(a) exception, 28 U.S.C. § 125, was nearly identical:
Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed . . . .
Accordingly, we do not distinguish between cases that concern section 959(a) and those that concern 28 U.S.C. § 125.

retail store.'" Carter, 220 F.3d at 1254 (quoting Lebovits v. Scheffel (In re Lehal Realty Assocs.), 101 F.3d 272, 276 (2d Cir. 1996)).

For example, section 959(a) applied where a trustee continued the business of a debtor in operating a railroad, and the trustee had been sued in his representative capacity for damages for use of another's tracks, Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 138 (1946) (applying predecessor to section 959(a)), and in a case for wrongful death and injury resulting to a member of the public in a grade crossing accident, Valdes v. Feliciano, 267 F.2d 91, 94-95 (1st Cir. 1959). Also, the exception has been held to apply to an employee's claims arising from injuries caused by overwork at a railroad company operated by the trustee and the trustee's withholding of an employee's pension. Haberern v. Lehigh and New England Ry., Co., 554 F.2d 581, 585 (3d Cir. 1981).

On the other hand, courts have concluded that merely holding and collecting the assets intact, Vass, 59 F.2d at 971, collecting and liquidating the assets of the debtor, Austrian v. Williams, 216 F.2d 278, 285 (2d Cir. 1954), and taking steps for the care and preservation of the property, U. and I., Inc. v. Fitzgerald, (In the Matter of Campbell), 13 B.R. 974, 976 (Bankr. D. Idaho 1981), In re Kalb & Berger Mfg. Co., 165 F. 895, 896-97 (2d Cir. 1908), do not constitute "carrying on business." Likewise, actions taken in the mere continuous administration of

property under order of the court do not constitute an "act" or "transaction" in carrying on business connected with the estate. Field v. Kansas City Refining Co., 9 F.2d 213, 216 (8th Cir. 1925); see also In re DeLorean Motor Co., 991 F.2d at 1241 (action against trustee and representatives alleging abuse of process and malicious prosecution in relation to prosecution of fraudulent conveyance action is a suit for actions of trustee wholly unrelated to carrying on debtor's business because trustee merely collected, took steps to preserve, and/or held assets, as well as performed other aspects of administering and liquidating estate); Carter, 220 F.3d at 1254.

We agree with the district court that section 959(a) does not apply here. In his brief, Muratore represents that he was in the business of "leasing to commercial and residential tenants, and all required acts associated with maintaining such leases." His complaint, however, does not specify the nature of the businesses at issue. Darr contends that Muratore's business was actually "the making of mortgage loans." We need not, however, resolve this question. The allegations in the complaint focus upon Darr's actions in the fulfillment or non-fulfillment of his fiduciary responsibilities as trustee, as opposed to acts or transactions in the furtherance of Muratore's business whatever it was. See 11 U.S.C. § 959(a).

The accounting for and sale of property, the filing of tax returns, and the payment of taxes were among Darr's statutory responsibilities and powers as a Chapter 11 trustee. 11 U.S.C. §§ 363 & 1106;[3] see also Holywell Corp. v. Smith, 503 U.S. 47, 52-56 (1992) (Chapter 11 trustee is required to file tax returns and pay taxes with respect to the debtor). Indeed, Muratore does not appear to dispute that Darr had these responsibilities; rather, he argues that Darr did not adequately respond to them --

---

[3]11 U.S.C. § 363 states:
> (b) (1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . .
> (c) (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing . . . .

11 U.S.C. § 1106 states:
> (a) A trustee shall--
> . . .
> (6) for any year for which the debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the debtor's books and records and the availability of such information; and
> (7) after confirmation of a plan, file such reports as are necessary or as the court orders . . . .

specifically, that Darr did not liquidate the properties quickly enough, improperly liquidated the properties, and did not pay taxes or file tax returns.

The different counts in Muratore's complaint all allege Darr's misconduct in discharging his trustee's administrative responsibilities. Count I alleges that Darr did not "faithfully perform the duties of his office" when he performed improper liquidations, failed to file tax returns and pay taxes, and allowed the purchase of property with illegal funds. Counts II, III, and IV merely reiterate these allegations within claims for "abuse of process," "negligence," and violations of 18 U.S.C. §§ 1961-1968 respectively.[4] These allegations are very similar to ones made in other cases holding the 959(a) exception did not apply. Carter, 220 F.3d at 1254 (holding section 959(a) exception did not apply to claims arising from Chapter 7 trustee's allegedly improper liquidation of estate assets at auction)[5]; In re DeLorean Motor Co., 991 F.2d at 1240-41 (holding section 959(a) did not apply to action against Chapter 7 trustee and representatives alleging abuse

---

[4]Muratore does not appear to argue that the exception to the Barton doctrine applies to Count IV.

[5]For present purposes, we do not distinguish between cases involving Chapter 11 trustees and those involving Chapter 7 trustees. See Corzin v. Fordu (In re Fordu), 201 F.3d 693, 706 n.18 (6th Cir. 1999) (stating, "[t]he duties and responsibilities of either a Chapter 11 trustee or debtor-in-possession as a fiduciary for the bankruptcy estate are virtually the same as those imposed on a Chapter 7 trustee.").

-11-

of process and malicious prosecution in relation to prosecution of fraudulent conveyance action); Austrian, 216 F.2d at 285 (holding in Chapter 11 case that section 959(a) did not apply and stating, "[m]erely to attempt to collect and liquidate the assets of a debtor is not to carry on its business in any proper sense of the term.") (citations omitted); Kashani v. Fulton (In re Kashani), 190 B.R. 875, 884-85 (9th Cir. B.A.P. 1995) (holding section 959(a) did not apply to breach of fiduciary duty and negligence claims arising from, inter alia, Chapter 11 trustee's failure to sell or attempt to sell estate property in timely manner so as to realize best possible benefit to bankruptcy estate and trustee's engagement in speculative real estate venture in which trustee had no prior experience and without consultation and aid of experienced real estate developer).  Since Muratore bases his complaint on the trustee's alleged misconduct in liquidating and administering the estate's property, and not on tortious acts committed in the furtherance of Muratore's leasing or mortgage and real estate business, section 959(a) does not apply.

Muratore urges us to recognize as an additional or expanded exception to the Barton doctrine the situation where the trustee commits a tort of any sort.  For this proposition, he relies chiefly on a single case, In the Matter of Campbell, 13 B.R. at 976.  There, the district judge, in detailing the history of the case, included a portion of the state district court's holding with

respect to the plaintiff's state court action against the trustee, which stated, <u>inter</u> <u>alia</u>:

> "Apparently there are two situations in which a trustee . . . may be sued in State Court without leave of the federal bankruptcy court, one being where the trustee has committed a tort, and the other where the claim of wrongful doing arises out of the trustee's operating of the debtor's business."

<u>Id.</u> (citing Lawrence P. King, 2 Collier on Bankruptcy, § 23.20 at 642-45 (14th ed.))[6]. This language appears to be the only example of a court having articulated so broad a tort exception to the Barton doctrine.[7] On the other side of the ledger, there are numerous cases in which the Barton doctrine was held to bar tort actions brought without permission of the bankruptcy court. <u>See,</u> <u>e.g.</u>, <u>Carter</u>, 220 F.3d at 1253 (applying Barton doctrine and

---

[6]We find no mention of a tort exception to the Barton doctrine in the most recent, fifteenth edition of Collier on Bankruptcy. <u>Cf.</u> Lawrence P. King, 6 Collier on Bankruptcy ¶ 721.05 ("As a general rule, however, leave of the appointing court must be obtained to institute an action in a non-appointing forum for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court. Section 959(a) of title 28 creates a limited exception to this general rule by granting state courts jurisdiction over trustees in their official capacities where the acts or transactions complained of relate to 'carrying on business' connected to the property in trust.") (footnotes omitted).

[7]There is a case pre-dating <u>Campbell</u> that contains dicta somewhat suggestive of a similar exception. In <u>In the Matter of Mercy-Douglass Hospital, Inc.</u>, 364 F. Supp. 1066, 1068 (E.D. Pa. 1973), the district court of the Eastern District of Pennsylvania opined that litigants can bring "suits against the Trustee <u>personally</u> for wrongs committed while performing the duties of his office" (emphasis supplied) without the permission of the bankruptcy court.

-13-

stating, "There also is no merit to Carter's assertion that his tort claims -- breach of fiduciary duty and reasonable care -- are 'unrelated to' and 'outside the scope' of the bankruptcy proceeding because they do not arise directly from substantive provisions of the Bankruptcy Code."); In re Lehal Realty Assocs., 101 F.3d at 275-77 (breach of fiduciary duty); In re Linton, 136 F.3d 544, 544-46 (7th Cir. 1998) (malicious prosecution); Richman v. Batt, 265 B.R. 416, 417-19 (E.D. Pa. 2001) ("Plaintiff's allegations faintly sound in breach of fiduciary duty and fraud."); Taraska v. Carmel, 223 B.R. 200, 202-3 (D. Ariz. 1998) (defamation); Bay Area Material Handling, Inc. v. Broach (In re Bay Area Material Handling, Inc.), No. C 95-01903CW, 1995 U.S. Dist. LEXIS 21958, at *9-*14 (N.D. Cal. Dec. 6, 1995) ("damages for economic and emotional harm relating to Defendants' alleged failure to pursue discovery properly," "mismanagement of Bay Area's real estate," and "the trustee's noncollection of certain debts owed to the debtor by an outside third party"). In the present context, we can find no basis for recognizing some generalized tort exception to the Barton doctrine.

In addition, Muratore argues that the Barton doctrine does not apply here because the bankruptcy case is closed and the estate assets are no longer "in the receiver's hands" as they were in Barton. Muratore is wrong. To be sure, one purpose of the Barton doctrine is to prevent a party from obtaining "some advantage over the other claimants upon the assets" in the

-14-

trustee's hands, and that purpose would not necessarily be served here.  But the doctrine serves additional purposes even after the bankruptcy case has been closed and the assets are no longer in the trustee's hands.  See Barton, 104 U.S. at 128.  In In re Linton, the Seventh Circuit held that the Barton doctrine applied to a state court lawsuit filed eleven months after the bankruptcy case was closed.  136 F.3d at 544-45.  Writing for the court, Judge Posner stated:

> [w]ithout the requirement [of obtaining leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively.  It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.

Id.; see also In re Krikava, 217 B.R. 275, 278-79 (Bankr. D. Neb. 1998) (applying Barton doctrine to closed bankruptcy case).[8]

---

[8]Muratore's reliance upon In re Mailman Steam Carpet Cleaning Corp., 196 F.3d at 4, for the proposition that applying the Barton doctrine to closed bankruptcy cases is an improper expansion of its purpose is misplaced.  There, we merely held that, even though it allows a certain category of suits to proceed without prior leave from the appointing court, section 959(a) does not negatively imply that leave is required in all other cases.  Id.  We did not hold that the scope of the Barton doctrine should be restricted as Muratore suggests.

In the alternative, Muratore requests that if this Court concludes that it lacks subject-matter jurisdiction, it should nevertheless refer this case to the bankruptcy court rather than dismiss it.  This court, however, does not have this option.  Rule 12(h)(3) of the Federal Rules of Civil Procedure states that a court "shall dismiss" an action over which it lacks subject-matter jurisdiction.  See also Mills v. State of Maine, 118 F.3d 37, 51 (1st Cir. 1997).  If there is any basis for circumventing Rule 12(h)(3), Muratore does not point it out.

We AFFIRM the district court's dismissal of the case.