**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TETON MILLWORK SALES, a
Wyoming corporation,

      Plaintiff - Appellant,

v.

ROGER SCHLOSSBERG,

      Defendant - Appellee.

No. 07-8091
(D.C. No. 07-CV-00014-ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **EBEL**, and **GORSUCH**, Circuit Judges.

Plaintiff-Appellant, Teton Millwork Sales ("TMS"), appeals from the

district court's order granting Defendant-Appellee Roger Schlossberg's motion to

dismiss the action based upon absolute judicial immunity and lack of personal

jurisdiction. As Mr. Schlossberg now consents to personal jurisdiction, Aplee.

Br. at 1, the issue on appeal is whether the district court properly dismissed the

claim pursuant to Fed. R. Civ. P. 12(b)(6) by determining that Mr. Schlossberg

enjoys absolute judicial immunity as a court-appointed receiver for his actions in

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

collecting the assets of TMS.  Our jurisdiction arises under 28 U.S.C. § 1291.  We reverse and remand.

## Background

The present case arises from contentious divorce proceedings in a West Virginia Family Court, in which Mary Palencar sought and secured a divorce from her husband, Michael Palencar.  During the divorce proceedings, the court appointed Mr. Schlossberg as receiver to collect assets in which Mr. Palencar held an ownership interest so that they would be available to satisfy the court's orders.  In an order issued January 14, 2004, the court stated that Mr. Schlossberg was

> vested with actual legal and equitable title to and the right to obtain record title to and/or liens upon and/or actual physical custody and possession of all of the assets of the Respondent Michael Palencar (whether held by the said Respondent, either alone or jointly with any other person or entity, in his own name or in the name of any alias . . . or in the name of any other entity, including . . . Teton Millwork Sales).

Aplt. App. 69.  In order to give Mr. Schlossberg the powers necessary to carry out his receivership, the West Virginia court expressly contemplated that he would act outside the state of West Virginia.  Therefore, the court "authorized and directed" Mr. Schlossberg to "take such action as may appear necessary or desirable to obtain ancillary jurisdiction of these proceedings in such other States . . . as may appear appropriate."  Aplt. App. 70-71.

Apparently, Mr. Schlossberg then proceeded to use this authority to seize

-2-

the assets of TMS, a corporation in which Mr. Palencar was a twenty-five percent shareholder. Once TMS learned that its assets had been seized, it brought suit in Wyoming state court, asserting that Mr. Schlossberg committed abuse of process and fraud. Aplt. App. 1-10. TMS alleged that Mr. Schlossberg exceeded his authority by seizing TMS's assets in Wyoming, as well as its proprietary information and mail, even though he knew that Mr. Palencar was only a twenty-five percent shareholder in TMS and that there was no evidence to justify piercing the corporate veil of TMS. Aplt. App. 2 ¶ 21; 4 ¶¶ 38, 40-41, 44. TMS's complaint also alleged that Mr. Schlossberg falsely represented to various third parties that he had legal authority to seize TMS's assets in Wyoming, while intentionally failing to mention that he was required to but had not obtained ancillary jurisdiction in Wyoming. Aplt. App. 8 ¶¶ 78, 84, 86. According to the complaint, Mr. Schlossberg never obtained ancillary jurisdiction in Wyoming by securing a Wyoming court order prior to making these seizures. Aplt. App. 5 ¶¶ 47, 49, 51, 54. TMS also alleged that Mr. Schlossberg threatened TMS's agents with financial penalties if they accepted instructions from TMS and provided them with incomplete and misleading documents relating to his legal authority to seize TMS's assets. Aplt. App. 8 ¶ 79; 9 ¶¶ 88-89.

After removing the case to federal district court, Mr. Schlossberg filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), (2), (3), and (6). The district court granted the motion under Fed. R. Civ. P. 12(b)(2) and (6), concluding that it

lacked personal jurisdiction over Mr. Schlossberg and that TMS failed to state a claim because Mr. Schlossberg enjoyed absolute immunity as a court-appointed receiver.[1]  Aplt. App. 166.  TMS appeals this decision.  However, Mr. Schlossberg now consents to personal jurisdiction, see United States v. Vreeken, 803 F.2d 1085, 1089 (10th Cir. 1986), so we review only the Fed. R. Civ. P. 12(b)(6) grounds for dismissal.

## Discussion

I.     The *Barton* Doctrine

As an initial matter, we note that we have subject matter jurisdiction even though this case was brought against a court-appointed receiver without the appointing court's permission because TMS alleges that the receiver wrongfully took possession of property belonging to another.  Under the Supreme Court's decision in Barton v. Barbour, "[i]t is a general rule that before suit is brought against a receiver leave of the court by which [the receiver] was appointed must be obtained." 104 U.S. 126, 128 (1881).  However, Barton also makes it clear that "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter

---

[1] The district court recited the standards of review for Fed. R. Civ. P. 12(b)(1) concerning subject matter jurisdiction and 12(b)(6) for failure to state a claim.  See Aplt. App. 154.  Of course, if the complaint is dismissed for lack of personal jurisdiction, it must be dismissed under Fed. R. Civ. P. 12(b)(2).

of right; for in such case the receiver would be acting <u>ultra</u> <u>vires</u>." <u>Id.</u> at 134. This case falls squarely within this <u>ultra</u> <u>vires</u> exception to the <u>Barton</u> doctrine because TMS is alleging that Mr. Schlossberg wrongfully seized its assets rather than the assets of Mr. Palencar; accordingly, we have subject matter jurisdiction.

The dissent disagrees, pointing to the language in <u>Barton</u> distinguishing "claims aris[ing] against the receiver as such, whilst acting under the powers conferred on him, whether for labor performed . . . or for injury to persons or property" from claims against the receiver for "tak[ing] possession of property belonging to another" that are exempted under the <u>ultra</u> <u>vires</u> exception. <u>Id.</u> The dissent argues that this case falls within the first of these two classes of cases—and is therefore subject to the <u>Barton</u> doctrine—because Mr. Schlossberg was acting within the scope of his authority. In reaching the conclusion that Mr. Schlossberg acted within his authority, the dissent merely looks to the fact that the West Virginia court had issued a valid order granting Mr. Schlossberg extensive authority. However, simply looking at the facial validity of the order to seize Mr. Palencar's assets does not adequately deal with the fact, as fully discussed below, that TMS "allege[d] at the outset facts demonstrating," <u>In re Lowenbraun</u>, 453 F.3d 314, 322 (6th Cir. 2006), that Mr. Schlossberg acted beyond the scope of his authority by wrongfully seizing assets that did not belong to Palencar. <u>See</u> <u>In re Triple S Restaurants, Inc.</u>, 519 F.3d 575, 578 (6th Cir. 2008) (stating that <u>Barton</u> would not apply if the trustee acted "outside the scope

of his authority").

This case is distinguishable from the cases cited by the dissent because none of them involved an outside party who claimed that their assets had wrongfully been seized. See id. at 578 (involving a suit by the general counsel of a debtor corporation against the trustee for outrage and intentional infliction of emotional distress); In re Lowenbraun, 453 F.3d at 316 (involving a suit by one of the parties to a divorce proceeding against the trustee for libel, slander, abuse of process, wrongful use of civil proceedings, and outrage); In re Crown Vantage, Inc., 421 F.3d 963, 967-70 (9th Cir. 2005) (involving a claim by a party to a settlement agreement against the trustee for violation of the settlement agreement); Muratore v. Darr, 375 F.3d 140, 142-43 (1st Cir. 2004) (involving a suit by the owner of a debtor corporation against the trustee for, inter alia, abuse of process and negligence); Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 2000) (involving a suit by a debtor against the trustee for breach of fiduciary duties). Construing the language in Barton regarding "claims aris[ing] against the receiver as such, whilst acting under the powers conferred on him," 104 U.S. at 134, as broadly as the dissent does—so that it reaches even the claim of an independent third party whose assets were (allegedly) wrongfully seized—would render Barton's ultra vires exception null and void. We decline to read one sentence in Barton so broadly as to make the prior sentence meaningless.

II.     Motion to Dismiss for Failure to State a Claim

We review de novo a district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Howard v. Waide, 534 F.3d 1227, 1242-43 (10th Cir. 2008).  We must accept all well-pleaded factual allegations in the complaint as true and must construe them in the light most favorable to the plaintiff.  Kt & G Corp. v. Att'y Gen. of Okla., 535 F.3d 1114, 1133-34 (10th Cir. 2008).  In reviewing the complaint to determine whether it "state[s] a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), we must determine whether there are "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Id. at 1965.

"In reviewing a Rule 12(b)(6) motion to dismiss, our first step is to review the factual allegations that should have been considered by the district court."  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).  On a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Therefore, if the court considers documents outside the pleadings, the motion to dismiss must generally be converted to a summary judgment motion unless the documents relied upon by the court are referred to in the complaint, are central to the

-7-

plaintiff's claim, and are not disputed as to their authenticity.  Alvarado, 493 F.3d at 1215; Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  "The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

Turning to the application of these standards, we note that the district court could not consider certain materials beyond the complaint for purposes of the Fed. R. Civ. P. 12(b)(6) motion.  It could rely upon the undisputedly authentic court orders issued by the West Virginia court which were referred to in and are central to TMS's complaint.  See Aplt. App. 2 ¶ 16; 3 ¶ 30; 4 ¶ 42; 6 ¶¶ 58, 64.  However, it could not rely upon the affidavit of Mr. Schlossberg, see Aplt. App. 15-17, or any other extraneous documents in concluding that Mr. Schlossberg did not act beyond the scope of his authority.  Because those documents are not central to TMS's complaint and are not referred to therein, the district court could not rely upon them without granting TMS the opportunity to support its complaint with affidavits and the like.  See Alvarado, 493 F.3d at 1215-16; GFF Corp., 130 F.3d at 1384; Fed. R. Civ. P. 12(d), 56(c), 56(e).  Regardless of any such reliance,[2] we must address de novo whether the dismissal was warranted solely in

_____

[2]  The district court referenced not only the pleadings but also argument at

(continued...)

-8-

light of the complaint and the West Virginia court orders.

It is well established that judges and judicial officials enjoy absolute immunity from suit for acts performed in their official capacities. Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); T & W Invest. Co. v. Kurtz, 588 F.2d 801, 802 (10th Cir. 1978). As a derivative of this judicial immunity, non-judicial "officials charged with the duty of executing a facially valid court order enjoy absolute immunity." Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990) (quoting Valdez v. City & County of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989)) (brackets omitted). The Supreme Court and this court have clearly stated that this immunity is extended on the basis of the function being performed. Forrester v. White, 484 U.S. 219, 227 (1988); Valdez, 878 F.2d at 1287. Accordingly, "quasi-judicial" immunity extends only to non-judicial officers whose "acts [are] intertwined with the judicial process," Valdez, 878 F.2d at 1287, and whose "duties ha[ve] an integral relationship with the judicial process," Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000). Thus, a court-appointed receiver has absolute quasi-judicial immunity if he is faithfully carrying out the appointing judge's orders, T & W Inv. Co., 588 F.2d at 802, because "[e]nforcing a court order . . . is intrinsically associated with a judicial

[2](...continued)
a hearing that is not part of the record in concluding that Mr. Schlossberg was acting cooperatively, within his discretion, and within the terms of the pertinent order. Aplt. App. 127, 161-162.

proceeding," Valdez, 878 F.2d at 1288.

The quasi-judicial immunity of a court-appointed receiver, however, is not limitless. In order to be immune, the receiver must act within the scope of his authority in carrying out a court order. Turney, 898 F.2d at 1474 (stating that "absolute immunity extended only to acts prescribed" by the court order); T & W Inv. Co., 588 F.2d at 802-03 (analyzing whether the receiver was in fact following the orders of the court); see Davis v. Bayless, 70 F.3d 367, 373 (5th Cir. 1995) (stating that court-appointed receivers share absolute immunity as long as they act "in good faith and within the scope of the authority granted"); Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994) ("Like judges, these officials must be acting within the scope of their authority."); Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir. 1976) (stating that absolute immunity extends to a court-appointed receiver who "faithfully and carefully carries out" a court order); see also New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1303 (9th Cir. 1989). Furthermore, because the "quasi-judicial" immunity of individuals such as court-appointed receivers is a derivative of judicial immunity, there is no immunity if the court or the receiver acts "in the 'clear absence of all jurisdiction.'" Turney, 898 F.2d at 1474 (quoting Stump, 435 U.S. at 357); see Whitesel, 222 F.3d at 868-69 (concluding that non-judicial officers did not act in clear absence of all jurisdiction); Davis, 70 F.3d at 373 (stating that the judge must not be acting in clear absence of all jurisdiction);

-10-

Guetschow, 869 F.2d at 1303-04 (inquiring as to whether the court and the receiver acted beyond the scope of their jurisdiction); see also Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989).

The issue in this case, then, is whether the complaint sets forth a claim, plausible on its face, that Mr. Schlossberg is not entitled to absolute immunity. As TMS reminds us, the district court was required to view the facts in its favor. Aplt. Br. at 28; Kt & G Corp., 535 F.3d at 1133-34. Given that we also must accept all well-pleaded facts alleged as true, we find that TMS has satisfied this standard. The complaint alleges facts that, on their face, show that Mr. Schlossberg does not enjoy absolute immunity.

First, the complaint alleges that Mr. Schlossberg exceeded the scope of his authority by seizing all of TMS's assets. According to the complaint, Mr. Schlossberg seized TMS's assets and mail even though he knew that Mr. Palencar was only a twenty-five percent shareholder in TMS and that there were no grounds to pierce the corporate veil. See Aplt. App. 2 ¶ 21; 4 ¶¶ 38, 41, 44. Assuming the truth of these allegations, these facts would establish that Mr. Schlossberg exceeded the scope of his authority, because the West Virginia court order only vested him with the "actual legal and equitable title to and the right to obtain record title to and/or liens upon and/or actual physical custody and possession of all of the assets of . . . *Michael Palencar*." Aplt. App. 69 (emphasis added). While the court order permitted Mr. Schlossberg to collect Mr.

Palencar's assets even if they were held in the name of another entity, including TMS, the court order did not grant Mr. Schlossberg authority to seize assets that did not belong to Mr. Palencar. In fact, the court could not grant such authority if the affected individuals or entities were not parties to the proceeding—and TMS was not party to the Palencars' divorce proceeding. Aplt. App. 2, ¶¶ 14, 18, 20; see United States v. Bigford, 365 F.3d 859, 864-65 (10th Cir. 2004) ("[J]udgments rendered by a court lacking jurisdiction are void."); West v. Capitol Fed. Sav. and Loan Ass'n, 558 F.2d 977, 980 (10th Cir. 1977) ("A personal judgment entered without jurisdiction over the person violates due process and is void."). If Mr. Schlossberg did not simply seek to secure Mr. Palencar's assets but rather sought to take the assets of TMS absent any colorable evidence to justify piercing the corporate veil of TMS in such a fashion, then he exceeded the scope of his authority by not acting in accordance with the court order and would not enjoy absolute immunity.[3] See Turney, 898 F.2d at 1474; T & W Inv. Co., 588 F.2d at 802-03.

Second, the complaint alleges that Mr. Schlossberg exceeded the scope of his authority by committing fraud. In order to adequately allege fraud, "a party

_____

[3] After all, unless there is some evidence that TMS was simply Mr. Palencar's alter ego, then Mr. Schlossberg must respect TMS's status as a separate entity. Eastridge Dev. Co. v. Halpert Assocs., Inc., 853 F.2d 772, 779 (10th Cir. 1988) ("'Ordinarily, a corporation is a separate entity distinct from that of individuals comprising it.'" (quoting Amfac Mech. Supply Co. v. Federer, 645 P.2d 73, 77 (Wyo. 1982))).

-12-

must state with particularity the circumstances constituting fraud." Fed R. Civ. P. 9(b). TMS did so here. In paragraph 78 of the complaint, TMS alleges that "Schlossberg made the following specific false factual representations," including assertions that "Schlossberg was in a position of judicial authority over Teton" and that he "was vested with title to all the assets, property, mail and confidential business and corporate information of Teton." Aplt. App. 8 ¶ 78. TMS also alleges that Mr. Schlossberg told TMS's agents that they were "forbidden from accepting instructions from Teton, and that those agents would be subject to financial penalties should they do so." Aplt. App. 8 ¶ 79. Furthermore, according to the complaint, Mr. Schlossberg made these statements knowing that they were false and that he had no jurisdiction to exert judicial authority in Wyoming. Aplt. App. 8 ¶ 80, 83. These allegations, accepted as true, are sufficient to survive a motion to dismiss because perpetuating a fraud is not "intrinsically associated with a judicial proceeding."[4] Valdez, 878 F.2d at 1288.

The foregoing analysis certainly does not resolve the issue of whether Mr. Schlossberg will ultimately enjoy absolute immunity. Because we are reviewing

---

[4] We acknowledge that the Supreme Court has said that malice or corrupt motive—at least on the part of judges—is insufficient to destroy absolute immunity. See Stump, 435 U.S. at 356. Here, however, TMS does not merely allege that a bad motive underlies an otherwise permissible act. Rather, TMS alleges that the act itself—the making of fraudulent statements—is not pursuant to a court order. See Guetschow, 869 F.3d at 1304-05 (finding a court-appointed receiver to have no absolute immunity where the plaintiff alleged theft).

-13-

the grant of a motion to dismiss, we need only decide whether the complaint states sufficient facts such that it is plausible that Mr. Schlossberg does not enjoy absolute immunity. While in many cases it may be clear on a motion to dismiss whether absolute immunity applies, in this case that issue must be resolved in further proceedings, once the parties have had the opportunity to develop the facts through discovery. Here, looking solely to permissible materials at the motion to dismiss stage, we conclude that TMS has adequately pleaded that Mr. Schlossberg was not "acting in accordance with and under the protection of a court order." T & W Invest. Co., 588 F.2d at 802.

We REVERSE and REMAND for further proceedings consistent with this order and judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

**EBEL**, Circuit Judge, Dissenting.

I respectfully dissent, because I believe that the Barton doctrine does apply in this case, and thus that the district court lacked jurisdiction over TMS's lawsuit.

The Barton doctrine holds that before suit may be brought against a receiver for acts performed in the receiver's "official capacity," "leave of the court by which [the receiver] was appointed must be obtained."[1] See Barton v. Barbour, 104 U.S. 126, 128 (1881) (citing Davis v. Gray, 16 Wall. 203, 83 U.S. 203, 218 (1872) (explaining that an appointing court "will not allow [a receiver] to be sued touching the property in his charge, nor for any malfeasance as to the parties, or others, without its consent," and citing cases)); see also Springer v. Infinity Group Co., No. 98-5182, 1999 WL 651391, at *1 (10th Cir. Aug. 26, 1999) (unpublished).[2]

The doctrine, which is a "jurisdictional fact" in federal court, see Barton, 104 U.S. at 131, applies to lawsuits arising from "acts done in the [receiver's or] trustee's official capacity and within the [receiver's or] trustee's authority as an officer of the court." In re Triple S Restaurants, Inc., 519 F.3d 575, 578 (6th Cir.

---

[1]The doctrine also applies to trustees in bankruptcy. See In re Crown Vantage, 421 F.3d 963, 971 (9th Cir. 2005).

[2]Springer apparently is the only case this Court has decided on the Barton doctrine. Because that brief, unpublished Order and Judgment contains no commentary on or interpretation of the doctrine, however, Barton's application is a matter of first impression in this circuit.

2008) (quotation omitted); see also Springer, 1999 WL 651391, at *1 (affirming application of the doctrine to a lawsuit that sought relief "for acts [a bankruptcy trustee] did in his official capacity as trustee"); In re Crown Vantage, 421 F.3d 963, 970-71 (9th Cir. 2005) (explaining that the doctrine applies when the lawsuit is "for acts done in the [receiver's] official capacity"); Muratore v. Darr, 375 F.3d 140, 145 (1st Cir. 2004) (applying the doctrine where "[t]he different counts in [the plaintiff's] complaint all allege [the trustee's] misconduct in discharging his trustee's administrative responsibilities"); Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 2000) (observing that the Barton rule is triggered by lawsuits "for acts done in the actor's official capacity").

The majority rightly points out that under Barton, "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires." (See O & J at 5-6 (quoting Barton, 104 U.S. at 134).) Based on this exception to the doctrine, the majority concludes that because "TMS is alleging that Mr. Schlossberg wrongfully seized its assets rather than the assets of Mr. Palencar," and because TMS is an "independent third party," Barton does not apply in this case.

Yet immediately after announcing the ultra vires exception to the rule, the Barton Court distinguished, from that exception, cases in which "claims arise against the receiver as such, while acting under the powers conferred on him,

-2-

whether for labor performed, for supplies and materials furnished, or for injury to persons or property." Barton, 104 U.S. at 134 (emphasis added). What the Supreme Court appears to be saying is that ordinarily an assignee who wrongfully takes possession of property of another may be sued, but when the assignee is acting pursuant to a receivership order of another court, either the claim of wrongful taking must be brought in the receivership court or permission from the receivership court must be obtained to bring the suit elsewhere.

Federal courts analyzing subject-matter jurisdiction under the doctrine thus have looked to whether, in the conduct at issue, receivers or trustees acted "within the context of" their court-appointed role to "recover[] assets for the estate," Triple S Restaurants, 519 F.3d at 578; "were acting within the scope of their duties," In re Lowenbraun, 453 F.3d 314, 322 (6th Cir. 2006); allegedly committed torts "unrelated to and outside the scope of the bankruptcy proceeding," Muratore, 375 F.3d at 147 (quotation omitted); or allegedly engaged in misfeasance "stemming from their official bankruptcy duties," Carter, 220 F.3d at 1253. See also Muratore, 375 F.3d at 147-48 (refusing to recognize a "generalized tort exception to the Barton doctrine"); Lowenbraun, 453 F.3d at 322 (adopting a presumption that "acts were part of the trustee's [court-ordered] duties unless Plaintiff initially alleges at the outset facts demonstrating otherwise").

Our determination of whether the district court lacked subject-matter jurisdiction over TMS's lawsuit thus turns simply on the question of whether the lawsuit arises from actions that Roger Schlossberg ("Schlossberg") performed within the authority of his court-appointed role as a receiver. The West Virginia Family Court, which appointed Schlossberg during the Michael Palencar ("Palencar") divorce proceeding, explained that authority and role as follows. Having in a February 2003 order "adjudged and ordered" that Schlossberg "shall seize <u>any assets that [Palencar] has an ownership interest therein</u>" (Aplt. App. at 26 (emphasis added)), the court in January of 2004 issued an amended order that recited and affirmed the terms of the February 2003 order and added,

> It was and remains the intention of the Court by the aforesaid appointment of Roger Schlossberg both as Trustee and as Special Receiver <u>that [Schlossberg] be vested with the broadest possible powers of a Trustee or Receiver</u>[1] acting within the equitable power of this Court and the common law of this State to investigate the financial and other affairs of [Palencar] and to be vested with actual legal and equitable title to and the <u>right to obtain record title to and/or liens upon and/or actual physical custody and possession of all of the assets of [Palencar] (whether held by [Palencar], either alone or jointly with any other person or entity, in his own name or in the name of any alias . . . or in the name of any other entity, including, inter alia, . . . Teton Millwork Sales</u>) as is required to satisfy by sale, liquidation or other execution the aforesaid Judgment and all of the other Orders heretofore entered in these proceedings and as hereafter may be entered with respect to the existing and prospective obligations of [Palencar].
>
> [1]Including the right to receive all mail addressed in any fashion to [Palencar], either alone or jointly with any other person, in his own name or in the name of any alias . . . or in the name of any other

entity through which [Palencar] conducts his financial affairs (including . . . Teton Millwork Sales).

(Id. at 69.)

The family court went on, in the amended order, to "take note" that certain of Palencar's assets were located outside of West Virginia and perhaps outside of the United States. (Id. at 70.) The court explained, "[i]n order to give full force and effect to the powers herein granted to the Trustee/Special Receiver, it is the express contemplation of this Court that [Schlossberg] shall act outside the territorial limitations of this State." (Id. at 70.) The court then ordered that Schlossberg's appointment as Trustee and Special Receiver, "for those purposes and with those powers above-explicated," be "ratified and confirmed," and further "[o]rdered, that [Schlossberg] expressly is authorized and directed forthwith to take such action as may appear necessary or desirable to obtain ancillary jurisdiction of these proceedings in such other States of the United States . . . as may appear appropriate." (Id.)

The West Virginia Family Court clearly intended for Schlossberg to have the broadest possible authority to act on its already broad orders, and for him to act outside West Virginia–including in seizing the mail and the assets of TMS, which the court named specifically in its order. Furthermore, the order directed Schlossberg to seize not simply assets that Palencar held unilaterally and in his own name, but also "any assets" in which he "ha[d] an ownership interest,"

including assets held "jointly with any other person or entity, in his own name or in the name of any alias . . . or in the name of any other entity, including, inter alia, . . . Teton Millwork Sales." (Id. at 26, 29.)

As the majority opinion makes clear, TMS's complaint alleged not that Schlossberg was acting outside the context of this expansive court-appointed role, nor that he committed torts unrelated to and beyond the scope of that role, but rather that he engaged in misfeasance stemming from his broad official duties. See Triple S Restaurants, 519 F.3d at 578; Muratore, 375 F.3d at 147; Carter, 220 F.3d at 1253. Thus, TMS alleged that "Schlossberg seized TMS's assets and mail even though he knew that Mr. Palencar was only a twenty-five percent shareholder in TMS and that there were no grounds to pierce the corporate veil"; that Schlossberg misrepresented to TMS employees that he was "in a position of judicial authority over Teton and . . . vested with title to all the assets, property, mail, and confidential business and corporate information of Teton"; and that Schlossberg misrepresented to TMS employees that they "were forbidden from accepting instructions from Teton, and that [they] would be subject to financial penalties if they should do so." (O & J at 12-13 (quotations omitted).)

The majority concludes that these allegations demonstrate "that Schlossberg acted beyond the scope of his authority by wrongfully seizing assets that did not belong to Palencar." (Id. at 5.) Yet that conclusion fails to account for the plain language of the order, which authorized and directed Schlossberg to

seize not only assets that "belong[ed] to Palencar" outright or even jointly with others (id. at 5, 11), but also "any assets that [Palencar] has an ownership interest therein" (Aplt. App. at 26) (emphasis added). An order to seize assets in which Palencar has an ownership interest is patently not equivalent to a court order to seize assets that Palencar owns outright.[3]  As the Complaint alleged, Schlossberg knew that Palencar had a 25% ownership interest in TMS.  (O & J at 11.) Therefore, by its explicit terms, the West Virginia Family Court Order authorized Schlossberg to seize TMS assets, because Palencar "ha[d] an ownership interest therein."

The majority objects that a judicial order that would authorize such a seizure would be illegal, because TMS was not a party to the divorce proceeding that produced the order.  (O & J at 12, citing cases.)  Indeed, much–if not most–of TMS's complaint is similarly devoted simply to alleging that the West Virginia Family Court did not have jurisdiction over TMS, and thus could not legitimately order Schlossberg to seize TMS's mail or assets (so that Schlossberg, in turn, was not acting pursuant to a valid court order when he did seize that mail and those assets).  (See Compl. ¶¶ 17-20, 25-35, 38-40, 45-54, 62-70 (Aplt. App. 1-5).) However, the Jefferson County, West Virginia, Circuit Court had already decided

---

[3]Similarly, if Palencar had held a 25% ownership interest in a house, the explicit terms of the court order would have directed Schlossberg to seize the house itself–the asset in which Palencar had an ownership interest.

-7-

in Palencar's and TMS's 2005 lawsuit against Judge Wertman, who appointed Schlossberg, that the family court acted within its jurisdiction in issuing the orders appointing Schlossberg and directing him to act as it did. (Aplt. App. at 102-107.) Having failed to appeal the West Virginia Circuit Court's decision, TMS may not now relitigate, on the ground that it is a putatively "independent third party" (see O & J at 6), the issue of whether the family court had jurisdiction to order Schlossberg to seize TMS's assets.[4] See In re Scrivner, 535 F.3d 1258, 1266 (10th Cir. 2008) (summarizing the doctrine of issue preclusion).

For our purposes, the dispositive facts are simply that the family court issued orders appointing Schlossberg Special Receiver and directing him to act; those orders were adjudicated valid in a case to which TMS was a party and which TMS did not appeal; and according to the allegations in the Complaint, Schlossberg performed the expansive duties–including seizing "any assets that [Palencar] has an ownership interest therein"–that the orders directed him to perform. If, while thus "acting under the powers conferred on him," Schlossberg allegedly committed torts or other misfeasance resulting in "injury to persons or

---

[4]If Schlossberg were alleged to have seized the assets of a true stranger to the West Virginia Family Court orders–if he were alleged, for instance, to have seized the assets of a corporation in which Palencar did not hold an ownership interest–I would agree with the majority's invocation of the ultra vires exception to the Barton doctrine. The plain language of those orders, however–regardless of this Court's or TMS's opinion as to their legality–makes clear both that TMS was not such a stranger and that Schlossberg was acting as the court directed him to act.

property," <u>Barton</u>, 104 U.S. at 134, the <u>Barton</u> doctrine dictates that TMS must procure the permission of the West Virginia Family Court before it may sue Schlossberg outside that forum.

At oral argument, counsel for TMS suggested that <u>Barton</u> should not apply in this case because the res that Schlossberg held in his role as receiver has now been fully distributed. Our sister circuits that have considered this argument have rejected it, concluding that the <u>Barton</u> doctrine "serves additional purposes even after the . . . case has been closed and the assets are no longer in the trustee's hands." <u>Muratore</u>, 375 F.3d at 147.

> Without the requirement [imposed by the <u>Barton</u> doctrine], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive . . . . Furthermore, requiring that leave to sue be sought enables [appointing] judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the [appointing] judge . . . ; this helps the judge decide whether to approve this trustee in a subsequent case.

In re Linton, 136 F.3d 544, 545 (7th Cir. 1998); <u>see also</u> <u>Crown Vantage</u>, 421 F.3d at 972; <u>Carter</u>, 220 F.3d at 1252-53. I agree with this reasoning, and would hold that if the doctrine otherwise applies, as it does in this case, it applies even

when a "case has been closed and the assets are no longer in the trustee's [or receiver's] hands."[5] Muratore, 375 F.3d at 147.

I would vacate the district court's order and remand with instructions for the district court to dismiss TMS's lawsuit for lack of subject-matter jurisdiction. Therefore, I would not reach the Rule 12(b)(6) dismissal.[6]

---

[5]In this case, the West Virginia Family Court also indemnified Schlossberg against expenses "suffered or incurred by him in connection with his defense of a claim asserted against him . . . . arising from or related to his alleged performance or nonperformance of his duties as Trustee or Special Receiver in this action." (Aplt. App. 73-74.) Therefore, although Schlossberg's receivership has been terminated, it appears that a judgment against him arising from his performance of his receivership duties might, in fact, affect the res he once held, even though it has already been distributed.

[6]If I were to reach that issue, however, I would conclude that for substantially the same reasons that inform my Barton analysis–i.e., that TMS has not alleged sufficient facts to make a plausible claim that Schlossberg was not acting pursuant to a valid judicial order–the district court correctly dismissed the case on the ground that Schlossberg is entitled to absolute quasi-judicial immunity.